Filed 2/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEX AVILA et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>SOUTHERN CALIFORNIA SPECIALTY CARE, INC., et al.,<br><br>    Defendants and Appellants. | G054269<br><br>(Super. Ct. No. 30-2016-00843634)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.

Giovanniello Law Group, Alexander F. Giovanniello, Karen A. Bocker, Danielle M. VandenBos and Thomas C. Swann for Defendants and Appellants.

Valentine Law Group, Kimberly A. Valentine, Jennifer L. Turner and Joseph F. Fighera for Plaintiffs and Respondents.

\*          \*          \*

Southern California Specialty Care, dba Kindred Hospital – Santa Ana and Kindred Healthcare Operating, Inc. (Kindred or defendants) appeal from the trial court's

order denying its petition to compel arbitration as to the negligence and elder abuse claims of now-deceased Antonio Avila (Antonio), and the wrongful death claim brought by his son and survivor, Alexis Anthony Avila (Alex)[1] (collectively plaintiffs). The trial court ruled that Alex's wrongful death claim was not subject to arbitration. The court further exercised its discretion under Code of Civil Procedure section 1281.2, subdivision (c),[2] to refuse to enforce the arbitration agreement as to the remaining claims due to the risk of inconsistent judgments. We find no error and affirm the order.

I

FACTS

In 2007, Antonio executed California's statutory power of attorney form, naming his son, Alex, as his agent. In March 2015, Antonio, age 87 at the time, was transferred from another facility to Kindred, a long-term acute care hospital, suffering from various conditions, including sepsis and chronic renal failure.

The next day, after Antonio had begun receiving care, Alex was presented with a stack of documents, including a document entitled "Voluntary Alternative Dispute Resolution (ADR) Agreement" (the agreement). Alex signed the agreement on Antonio's behalf.

The agreement provided for arbitration after mediation, with "submission to arbitration as provided by California law." It also refers to section 1281.6 (court appointment of an arbitrator if the parties cannot agree) and Evidence Code section 1157 with regard to confidentiality of peer review proceedings.

___

[1] We refer to the Avilas by their first names to avoid confusion. No disrespect is intended. While "Alexis" is apparently the full first name of Antonio's son, he is referred to in his briefs as "Alex," and we follow suit accordingly.

[2] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

The agreement stated "any dispute as to medical malpractice," in addition to "any legal claim or civil action arising out of or relating to your hospitalization" was subject to arbitration. "This ADR agreement also covers any claim or action brought by a party other than you (e.g., an action by your spouse, legal representative, agent, heir) arising out of or relating to your hospitalization . . . ." The agreement also included a 30-day period in which to rescind.

On the signature page, immediately prior to the signature area, there is a statement pursuant to section 1295, subdivision (b) stating that by signing, the signator is "agreeing to have any issue of medical malpractice decided by neutral arbitration and you are giving up your right to a jury or court trial." The signature line under "name of patient" was stamped "unable to sign," and the signature was Alex's, followed by the word "son." (Original capitalization omitted.) It was also signed by Alex under a statement regarding his certification that he was authorized to act as Antonio's agent.

According to the complaint, Antonio died within five days of admission as a result of Kindred's neglect. A dislodged feeding tube began infusing into the throat and/or esophagus instead of the stomach, and Antonio's impaired gag reflex was unable to clear his lungs. He aspirated, resulting in cardiopulmonary arrest and rapid decline until his death.

In March 2016, the initial complaint was filed on behalf of Antonio, "by and through his successor-in-interest" Alex, and individually on Alex's behalf. The first cause of action for "negligence/willful misconduct" and the second cause of action for elder abuse and neglect was on behalf of both plaintiffs. A third and final cause of action for wrongful death was filed on Alex's behalf only. In May, defendants filed an answer, demand for jury trial, and notice of posting of juror fees. They also sent a letter to plaintiffs' counsel demanding dismissal of the lawsuit and proceeding to arbitration. Plaintiffs declined.

3

In July, Kindred filed the instant petition to compel arbitration and motion to stay. They argued there was a written agreement between plaintiffs and defendants providing for arbitration of all disputes, and plaintiffs had refused their demand. Kindred argued, among other things, that the Federal Arbitration Act (9 U.S.C. § 1, et seq. (FAA)) applied to the agreement, that no traditional defenses to contract law applied, and the agreement was enforceable as to Alex as well as to Antonio. Defendants also contended the agreement was enforceable under California law as well as the FAA.

In response, plaintiffs argued the agreement was unconscionable, and the defendants had waived their right to arbitrate by their unreasonable delay. They further argued that Alex was not a signatory to the agreement, which was unenforceable against him, and the presence of his nonarbitrable wrongful death claim created the risk of inconsistent rulings. Accordingly, they requested the trial court, in an exercise of discretion, to retain jurisdiction. Defendants filed a reply in due course.

The trial court initially issued a tentative decision granting defendants' motion, but after hearing argument, took the matter under submission. The court's final order denied the motion, concluding defendants had failed to show a valid arbitration agreement with respect to Alex. The court exercised its discretion under section 1281.2, subdivision (c), to refuse to order arbitration of the remaining claims, citing the risk of inconsistent rulings.

Defendants now appeal.

II

DISCUSSION

*Standard of Review*

"'""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]"'"" (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686.) The issue of whether a third party is bound by an arbitration agreement is a question of law. (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 (*Daniels*).)

"[T]he ultimate determination whether to stay or deny arbitration based on the possibility of conflicting rulings on common questions of law or fact is reviewed for an abuse of discretion. [Citation.] 'The court's discretion under section 1281.2, subdivision (c) does not come into play until it is ascertained that the subdivision applies, which requires the threshold determination of whether there are nonarbitrable claims against at least one of the parties to the litigation (e.g., a nonsignatory).'" (*Daniels*, *supra*, 212 Cal.App.4th at p. 680; see *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 971 (*Acquire*).)

*The FAA, CAA, or Both*

Defendants argue the FAA applies to the agreement; plaintiffs argue the California Arbitration Act (§ 1280, et seq.) (CAA) applies instead. The reason this is of relevance here is because of the trial court's exercise of its discretion under section 1281.2, subdivision (c), to refuse arbitration in certain cases.[3] Defendants claim that if

---

[3] We will discuss the exercise of that discretion in due course.

the FAA applies, the trial court erred as a matter of law in applying section 1281.2, subdivision (c). Defendants, however, are incorrect.

The FAA, which includes both procedural and substantive provisions, governs agreements involving interstate commerce. The agreement does not mention the FAA at all, although it does mention California law several times, including the statement in the opening article, that disputes "will be determined by submission to arbitration as provided by California law." The agreement also provides that section 1281.6 will govern if the parties cannot agree on an arbitrator, and Evidence Code section 1157 "shall be enforced in any arbitration" under the agreement.

The procedural aspects[4] of the FAA do not apply in state court absent an express provision in the arbitration agreement. (See *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 922 [even where agreement specifies FAA governs any disputes, CAA governs procedures]; *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 388-390; see *Volt Info. Sciences, Inc. v. Bd. of Trustees* (1989) 489 U.S. 468, 476-477, fn. 6; *Los Angeles Unified School Dist. v. Safety National Casualty Corp.* (2017) 13 Cal.App.5th 471, 479-480.)

As noted above, the agreement here does not even mention the FAA, much less expressly adopt its procedural rules. Accordingly, the FAA's procedural rules do not apply here. Any state law procedural provisions regarding arbitration are valid unless they defeat the rights granted by the FAA to equal enforcement of arbitration clauses. Defendants argue section 1281.2, subdivision (c), places arbitration agreements "on an unequal footing than other contracts," but do not cite any case where California or federal courts that reach that conclusion. Indeed, there is ample case law to the contrary,

---

[4] Among other things, the substantive portions of the FAA preempt state laws that "discriminate" against arbitration agreements in particular. For example, California cannot, under the FAA, adopt a judicial rule or statute proclaiming class action waivers in arbitration agreements are invalid. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333.)

6

including from the California Supreme Court, which has held that section 1281.2, subdivision (c), does not defeat the rights granted by the FAA, and is therefore not preempted. (*Cronus Investments, Inc. v. Concierge Services*, *supra*, 35 Cal.4th at p. 393.)

*MICRA or Not MICRA*

A key issue in this case is whether Alex is bound by the agreement. Defendants concede that Alex did not sign the agreement in his individual capacity, but as Antonio's agent. But they argue that nonetheless, the wrongful death claim brought in his personal capacity is subject to arbitration pursuant to section 1295.

Section 1295 is part of California's Medical Injury Compensation Reform Act (MICRA). It created certain requirements for arbitration agreements of "any dispute as to professional negligence of a health care provider." (§ 1295, subd. (a).) It defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 1295, subd. (g)(2).)

Carving out an exception to the general rule that arbitration agreements must be the subject of consent rather than compulsion, in *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 849 (*Ruiz*), the California Supreme Court held that section 1295 permitted patients who consented to arbitration to bind their heirs in actions for wrongful death. (*Id.* at p. 841.) It concluded that "all wrongful death claimants are bound by arbitration agreements entered into pursuant to section 1295, at least when, as here, the language of the agreement manifests an intent to bind these claimants." (*Ibid.*)

The question, then, is whether *Ruiz* is controlling here, and we must therefore determine whether this case is about "professional negligence," as defined by MICRA, or something else. *Ruiz's* focus was on section 1295 and the intent behind it. (*Ruiz*, *supra*, 50 Cal.4th at pp. 843-844, 849-854.) The court was "persuaded that section 1295, construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions." (*Id.* at p. 849.) Not only did "section 1295, subdivision (a) contemplate[] arbitration 'of any dispute as to professional negligence of a health care provider[,]'" including wrongful death, but it "was part of MICRA's efforts to control the runaway costs of medical malpractice . . . by promoting arbitration of malpractice disputes . . . ." (*Ibid*.)

In *Daniels*, the plaintiff sued a residential care facility (as distinguished from a health care facility, as here) in her personal capacity. She alleged causes of action for wrongful death, elder abuse, and related claims. She alleged the facility had failed to properly care for her 92-year-old mother and caused her mother's death. The defendant unsuccessfully petitioned to compel arbitration under a clause in a residency agreement the plaintiff signed on her mother's behalf pursuant to a durable general power of attorney. (*Daniels*, *supra*, 212 Cal.App.4th at p. 678.) The arbitration clause at issue, like the one here, purported to bind the patient's heirs. (*Ibid.*)

The Court of Appeal affirmed, rejecting the argument that *Ruiz* required arbitration of the independent wrongful death claim. "*Ruiz* is based squarely on section 1295, which governs agreements to arbitrate professional negligence or medical malpractice claims in medical services contracts with health care providers." (*Daniels*, *supra*, 212 Cal.App.4th at p. 682; see also *Herbert v. Superior Court* (1985) 169 Cal.App.3d 718.) Defendants argue vociferously that *Daniels* is irrelevant because the defendant in that case was not a licensed health care provider. We disagree. What matters is not the license status of the defendant, but the basis of the claims as pleaded in the complaint. If the primary basis for the wrongful death claim sounds in professional

8

negligence as defined by MICRA, then section 1295 applies. If, as plaintiffs claim here, the primary basis is under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, §15600 et seq.) (the Act), then section 1295 does not apply and neither does *Ruiz's* exception to the general rule that one who has not consented cannot be compelled to arbitrate.

The complaint includes allegations that could be categorized as professional negligence as well as elder abuse. There is at least some overlap between the two. But the complaint was pleaded as one for "negligence/willful misconduct," elder abuse and neglect under the Act, and wrongful death. The complaint alleges a "conscious and continued pattern of withholding the most basic care and services," which included a lack of monitoring, supervision, assistance, and other adequate care and services. It alleges the lack of availability of a physician, failure to provide properly trained staff and nursing, among other things.

"Neglect includes the failure to assist in personal hygiene, or in the provision of food, clothing, or shelter; the failure to provide medical care for physical and mental health needs; the failure to protect from health and safety hazards; and the failure to prevent malnutrition or dehydration." (*Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 88.) Under the Act, neglect "'refers not to the substandard performance of medical services but, rather, to the "failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." [Citation.] Thus, the statutory definition of "neglect" speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care.'" (*Id.* at p. 89.)

Plaintiffs, within the limits of established law, are essentially free to plead their case as they choose. They chose to plead a cause of action under the Act, and they did so successfully. The fact that they could have also pleaded a claim for medical malpractice, had they wished to do so, is irrelevant. Accordingly, we conclude the

9

plaintiffs' claim is not one within the ambit of section 1295, and therefore, *Ruiz's* holding does not apply. We next turn to the question of whether Alex actually agreed to arbitrate.

*Applicability of Agreement to Alex*

Having determined that section 1295 does not apply, we look to the general rules governing arbitration agreements to determine if a valid agreement exists between Alex and defendants. California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Even so, parties can only be compelled to arbitrate when they have agreed to do so. (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co.*, *Inc.* (2005) 129 Cal.App.4th 759, 763.) "Arbitration . . . is a matter of consent, not coercion . . . ." (*Volt*, *supra*, 489 U.S. at p. 479.) Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law. (*Id.* at pp. 475-476; see *Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153.) The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263.)

In California, a wrongful death claim is an independent claim. "Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 'creates a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283.)

In *Daniels,* the court rejected any claim that signing an arbitration agreement as agent gave the agent's consent to arbitrate independent claims, including a claim for wrongful death. "Because Daniels signed the residency agreement solely as agent and not in her personal capacity, there is no basis to infer that Daniels agreed to

10

arbitrate her wrongful death claim. In context, the provision making the arbitration clause binding on heirs means only that the duty to arbitrate the survivor claims is binding on [the mother] and other persons who would assert the survivor claims on [the mother's] behalf . . . . The agreement does not indicate an intent to bind third parties with claims independent of the survivor claims, such as wrongful death claimants." (*Daniels*, *supra*, 212 Cal.App.4th at p. 681; see *Monschke v. Timber Ridge Assisted Living, LLC* (2016) 244 Cal.App.4th 583, 587.)

*Daniels* relied on *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469 (*Fitzhugh*). In that case, the court rejected the defense contention that signing an arbitration agreement as an agent also constituted an agreement to arbitrate in a personal capacity. In that case, Ruth Fitzhugh was admitted to a health care facility. Her husband George Fitzhugh signed two arbitration agreements as her "'Legal Representative/Agent.'" (*Id.* at pp. 471-472.) Each of the agreements stated: "'This arbitration agreement binds the parties hereto, including the heirs, representatives, executors, administrators, successors, and assigns of such parties.'" (*Id*. at p. 472.) After Ruth died, George sued the facility for wrongful death (among other causes of action). (*Id.* at pp. 471-472.)

The court held that George was not required to arbitrate his wrongful death cause of action. "It is irrelevant to the wrongful death cause of action whether George Fitzhugh may have signed the arbitration agreements as the decedent's 'legal representative/agent.' Because there is no evidence that George Fitzhugh signed the arbitration agreements in his personal capacity . . . there is no basis to infer that [he] waived [his] personal right to jury trial on the wrongful death claim. [Citations.]" (*Fitzhugh*, *supra*, 150 Cal.App.4th at p. 474, fn. omitted.)

Such is the case here. There is simply no evidence that when Alex signed the agreement as his father's agent, he had any intent to waive his right to a jury trial for

11

any personal claims. Accordingly, we find the trial court did not err by finding that no agreement to arbitrate existed as to Alex.

*Exercise of Discretion to Stay*

The trial court ruled: "Even if decedent and his heirs are bound by the arbitration agreement for survivor claims, the court exercises its discretion to 'refuse to enforce the arbitration agreement.' [Citation.] Compelling arbitration of the survivor claims would unreasonably risk 'conflicting rulings on a common issue of law or fact.' [Citations.]" As noted above, we review this issue for abuse of discretion. (*Acquire*, *supra*, 213 Cal.App.4th at p. 971; *Daniels*, *supra*, 212 Cal.App.4th at p. 680.)

Defendants first argue, once again, that section 1295 makes section 1281.2, subdivision (c), inapplicable. But as we already discussed, the provisions of MICRA do not apply to this case. We therefore reject this argument.

As to the exercise of the court's discretion, section 1281.2, subdivision (c), permits a stay if: "'A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party . . . aris[ing] out of the same transaction or series of related transactions'; and . . . 'there is a possibility of conflicting rulings on a common issue of law or fact.'" (*Acquire*, *supra*, 213 Cal.App.4th at pp. 967-968.) All three requirements must be satisfied before section 1281, subdivision (c), may be used to deny a motion to compel arbitration. (*Id*. at p. 968.)

Here, all three factors were met. Both parties are litigants in both the survivorship and wrongful death claims. Those claims involve the same set of operative facts. If the survivorship claims were arbitrated while the wrongful death claim was litigated, there is a strong possibility of inconsistent rulings. The courts in *Daniels*, *supra*, 212 Cal.App.4th at page 680, and *Fitzhugh*, *supra*, 150 Cal.App.4th at page 476, each reached the same conclusion. We find, accordingly, no abuse of the court's discretion.

*Public Policy*

Finally, defendants argue "public policy" supports sending the case to arbitration. While the law favors arbitration as an expeditious and cost-effective way to resolve disputes, consent of the parties is required. (See *Volt*, *supra*, 489 U.S. at p. 479.) "[W]e are not at liberty to ignore the well-established California law that '[t]he party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement.' [Citation.] Even though it is true—as defendants point out—that 'arbitration has become an accepted and favored method of resolving disputes . . .' [citations], it is well settled that an arbitration agreement requires consent. Simply put, '"[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he [or she] has not agreed to resolve by arbitration."' [Citations.]" (*Goldman v. SunBridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1178.) We therefore reject defendants' tacit argument that "public policy" may override the lack of consent to arbitration.

### III

### DISPOSITION

The order denying defendants' motion to compel arbitration is affirmed. Plaintiffs are entitled to their costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.

13