Filed 2/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| GAMMA ETA CHAPTER OF PI KAPPA ALPHA,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>HARLAN HELVEY et al.,<br><br>  Defendants and Appellants. | B295667<br><br>(Los Angeles County<br>Super. Ct. No. BC717737) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Stern, Judge.  Reversed and remanded.

Hatton, Petrie & Stackler, Arthur R. Petri, II, and Dan E. Heck for Defendants and Appellants.

ClintonBailey and Mark C. Bailey for Plaintiff and Respondent.

————————————

A housing corporation tried to enforce an arbitration agreement against a local chapter of an international fraternity. The trial court denied the corporation's motion to compel arbitration. We reverse because the international fraternity demanded arbitration, as did the housing corporation, so an arbitration there must be.

## I

We summarize the facts from the documents filed in the trial court.

## A

We describe the three entities pertinent to this case and the agreements between them. There are two entities on the fraternity side and one on the other side: the housing corporation. We begin with the fraternity side.

The Gamma Eta Chapter of Pi Kappa Alpha is a local chapter of the international Pi Kappa Alpha Fraternity. The international fraternity is a Tennessee corporation, while the chapter is unincorporated.

Members of the chapter are undergraduates at the University of Southern California. Members sign an agreement outlining the chapter's and fraternity's terms and conditions.

This written agreement is vital here because it shows the relationship between the international fraternity and the local chapter. With lawyerly precision, the text of this agreement uses capitalized nouns to denote the local chapter as "Chapter" and to refer to the international fraternity as "Fraternity." We recite the first two sentences of this carefully-drawn agreement, which defines the relationship of these two entities. Our italics mark important words.

"You have decided to join and become a candidate for membership with your *chapter ("Chapter")*, which possesses a charter to function as a *fraternal component* of The Pi Kappa Alpha International *Fraternity* ("*Fraternity*"). This Fraternity is composed of a large number of similarly-situated chapters throughout North America to which hundreds of thousands of previously-initiated members belong."

This agreement contains another significant provision. Again we italicize important words.

> "As a condition of joining and potential membership, you agree that any and all monetary, damage and/or membership disputes between you and your chapter and/or the Fraternity or involving any entity or person who is *affiliated* with the Fraternity shall be resolved by non-judicial mediation as a first effort and, if that mediation does not resolve the matter, by binding arbitration in accordance with *the Fraternity's dispute resolution procedures* which include a waiver of judges and juries in all state and federal judicial systems."

Each member also must sign a separate contract with the chapter describing the member's financial responsibilities to the chapter.

We now turn to the third entity in this case: the housing corporation. Gamma Eta Foundation of Nevada is the housing corporation. Harlan Helvey is the housing corporation's only officer and director. The chapter alleges the housing corporation "was specifically created to serve as a non-profit facilitator to ensure that the [Pi Kappa Alpha] fraternity at USC would consistently have a fraternity house to house and host its members." The housing corporation leases the fraternity house

from a landlord, then subleases rooms to the chapter members. Members pay rent to the housing corporation.

Each member who lives in the fraternity house signs an individual lease with the housing corporation. This lease contains no arbitration provision.

The housing corporation acts as the chapter's agent. It negotiates on the chapter's behalf with landlords for lease terms and pricing. The chapter claims that, without the chapter, the housing corporation has "no need to exist or otherwise enter into leases for fraternity houses at USC."

The record contains no written agreement between the chapter as a whole and the housing corporation. Neither the chapter nor the housing corporation argues such a contract exists.

B

We summarize the dispute.

The chapter sued the housing corporation and Helvey. We refer to both defendants as either "housing corporation" or "Helvey."

The chapter filed its original complaint on August 14, 2018. The operative first amended complaint, filed October 16, 2018, alleged Helvey grossly inflated expenses and overcharged the chapter by more than $106,000. The chapter also alleged Helvey threatened "to destroy [the chapter] as an active fraternity at USC" and to leave the members with no fraternity house if the chapter did not pay the new charges Helvey imposed after negotiating a lease with a new landlord. Helvey allegedly "demanded that each live-in member of [the chapter] sign a non-negotiated lease containing his inflated and unfair charges." The chapter further claimed Helvey falsified charges to equal or

4

exceed the members' security deposits, failed to follow the fraternity's guidelines, and misappropriated membership dues, rents, security deposits, donations, and fundraising money. The chapter sued Helvey and the housing corporation for constructive fraud, breach of fiduciary duty, unjust enrichment, negligent misrepresentation, and others.

The international fraternity did not join this suit. Rather, the international fraternity opposed litigation in court and demanded arbitration. It did so on October 29, 2018, less than two weeks after the chapter filed the first amended complaint. On October 29, 2018, the international fraternity's general counsel wrote a letter both to the chapter's president and to Helvey. This letter is the crucial document in this case. The parties refer to it by date, and sometimes also as the "Fraternity's memo" or "Def. Exh. 8."

The international fraternity's letter said the local chapter lacked "legal standing" to sue the housing corporation because of the arbitration provision in the agreement each member signed upon joining the fraternity. The letter stated the international fraternity officially recognized the housing corporation and the housing corporation was "affiliated with" the fraternity. The international fraternity's general counsel instructed the local chapter to withdraw the lawsuit immediately and to "seek to resolve this dispute first by mediation, and if not successful, then by binding arbitration."

This letter attached the membership agreement, which we already have quoted as informing new members they "have decided to join and become a candidate for membership with your chapter ("Chapter"), which possesses a charter to function as a

*fraternal component* of The Pi Kappa Alpha International Fraternity."

We again italicize the words *fraternal component* because they show the chapter is a subordinate member of an overarching and governing international organization.  This point is important on the merits.

On November 9, 2018, on the heels of the international fraternity's October 29, 2018 letter, the housing corporation filed a motion to compel arbitration and to stay the case.  The housing corporation conceded it was not a signatory to the arbitration agreement between individual chapter members and the fraternity, but argued it could invoke the agreement because it was the chapter and fraternity's "affiliate" and the chapter's agent.   Citing the October 29, 2018 letter from the international fraternity, the housing corporation argued the fraternity itself considered the housing corporation "affiliated with" the fraternity.  The housing corporation also argued the arbitration agreement encompassed the chapter's claims against it, because the agreement applied to "any and all monetary, damage, and/or membership disputes."  The housing corporation filed supporting evidence, including a case management statement dated October 25, 2018 in which the chapter's counsel checked a box stating the chapter was willing to participate in binding private arbitration.

On December 18, 2018, the housing corporation filed an amended motion to compel arbitration, as well as a separate amended motion to stay the case pending arbitration.  The record contains only the notice of motion for each motion.  It contains neither a memorandum of points and authorities nor evidence.

On December 26, 2018, the chapter opposed the motion to compel arbitration and to stay the case.

6

The chapter argued there was no arbitration agreement between the housing corporation and the chapter or its members, and the arbitration clause in the agreement between chapter members and the fraternity was "intended to apply to disputes between fraternity members and the international fraternal organization."

The chapter refused to obey the international fraternity's October 29, 2018 letter instructing the chapter to arbitrate its claims. The chapter's court papers claimed "Pi Kappa Alpha International is wrong" and the arbitration clause "simply does not apply to this case, regardless of what the Pi Kappa Alpha International Fraternal Organization might think."

The chapter did not object to the October 29, 2018 letter's admissibility. This letter is in evidence for the truth of the matters it asserts.

The chapter further contended the housing corporation waived any right to arbitrate by waiting until the parties were well into the litigation before demanding arbitration. The chapter filed its original complaint on August 14, 2018. The housing corporation responded by filing a motion to disqualify counsel on October 5, 2018. The chapter then filed the operative first amended complaint on October 16, 2018. The housing corporation demanded arbitration only after the fraternity's general counsel sent the October 29, 2018 letter to both parties, four months after the litigation began.

According to the chapter, the housing corporation's actions were inconsistent because the housing corporation filed an unlawful detainer action against the chapter's president without invoking the arbitration clause. Further, even if the action against housing corporation somehow were subject to arbitration,

7

the chapter sued Helvey "in his individual capacity for alleged acts of fraud" so Helvey could not invoke the right to arbitrate under the membership agreement. The chapter also argued this case had nothing to do with the subject matter of the arbitration agreement, and the housing corporation filed the motion to compel arbitration to disadvantage the chapter financially.

In an accompanying declaration, the chapter's counsel stated he mistakenly checked the arbitration box in the October 25, 2018 case management statement. He stated he filed an amended case management statement on November 27, 2018. This document is not in the record.

Other evidence the chapter filed with the opposition included (1) a declaration from the chapter's president; (2) the membership agreement containing the arbitration provision; (3) emails between the chapter's counsel and Helvey; (4) a lease agreement between the housing corporation and a chapter member; (5) letters from the chapter's counsel to Helvey outlining his unlawful acts; (6) emails between Helvey and a chapter member's father; (7) a Notice of Acknowledgement of Receipt of the chapter's original complaint, signed by Helvey; (8) a meet and confer email from the housing corporation's counsel to the chapter's counsel stating the housing corporation's intent to file a demurrer; (9) the October 5, 2018 unlawful detainer complaint Helvey filed against the chapter's president; and (10) a Notice of Related Case filed by the housing corporation linking the unlawful detainer action and the chapter's lawsuit against the housing corporation.

The housing corporation filed a reply on January 2, 2019. It pointed out the chapter's opposition was "silent on the Fraternity's memo (Def. Exh. 8), which concludes defendant

[housing corporation] is 'affiliated with' the Fraternity and the arbitration agreement applies to plaintiff's claims—the clearest evidence of the Fraternity's intent that defendants benefit from the arbitration agreement as non-signatories."  The housing corporation argued this letter was "[t]he only evidence of the parties' intent of the scope of the arbitration agreement."

The housing corporation also filed 25 evidentiary objections.

The trial court denied the housing corporation's motion to compel arbitration at the January 9, 2019 hearing.  The minute order states there was no court reporter at the hearing.  The housing corporation's opening brief before us states the trial court did not rule on its objections.  The minute order did not spell out the reasons for the trial court's ruling.  There is no statement of decision in the record.

The housing corporation appealed.

## II

We determine the standard of review.

The trial court may resolve a motion to compel arbitration in summary proceedings.  (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 683 (*Lane*).)  The moving party must prove a valid arbitration agreement exists by a preponderance of the evidence, and the opposing party must prove any fact necessary to its defense by a preponderance of the evidence.  (*Ibid.*)

When reviewing a trial court's ruling on a motion to compel arbitration, we accept the trial court's resolution of disputed facts when supported by substantial evidence.  (*Lane, supra,* 224 Cal.App.4th at p. 683.)  Our review is independent when there is no disputed extrinsic evidence.  (*Ibid.*)

9

Generally, whether and to what extent nonsignatories to an arbitration agreement can enforce the arbitration provision is a question of law, which we review independently. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708 (*Molecular*).)

In this case, there were no material factual disputes. The chapter argues to the contrary, contending the parties disagreed over whether the housing corporation waived the right to arbitration and whether the unlawful detainer action involved the same transactions as this case does, risking conflicting rulings under Code of Civil Procedure, section 1281.2, subdivision (c). The facts are not disputed in either argument. The parties agree on what happened. They disagree about whether the facts amount to waiver or potentially conflicting rulings. These are questions of law. When the issues presented as factual questions actually are legal in character, we independently review the trial court's decision. (*Molecular*, *supra*, 186 Cal.App.4th at p. 708.)

At oral argument, the chapter's counsel listed factual issues he claimed the trial court resolved at the January 9, 2019 hearing, and argued we must defer to these findings and their inferences. For instance, counsel argued the trial court found the chapter was not a component of the international fraternity and the international fraternity had no power to control the chapter in this dispute. But the same counsel stated in his response brief before us that "[t]he Court made no findings of fact" at the hearing and "the record is silent on the basis on which the trial court denied the motion." The housing corporation's brief also stated the trial court did not make factual findings.

There was no court reporter at the hearing. There is no statement of decision in the record. Despite the chapter's about

face at oral argument, our record shows—and the briefing concedes—the trial court made no factual findings.

Because there are no factual findings to which we can defer, our review must be independent.

                                        III

We identify the governing law, which is California state law.

The Federal Arbitration Act applies to agreements involving interstate commerce. (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 840.) In the trial court and in this court, however, no party mentioned interstate commerce or the Federal Arbitration Act. No side claims there is an issue of federal preemption. (Cf. *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339, 341.) Because no party asks us to apply the law of any other jurisdiction, we apply California law.

                                        IV

We can resolve the housing corporation's appeal without a reporter's transcript.

There was no court reporter at the hearing on the housing corporation's motion to compel arbitration. Absence of a reporter's transcript or suitable substitute may warrant affirmance when the transcript is necessary for meaningful review. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187.) But the chapter does not argue the hearing included any live testimony or additional evidence. Because we independently review the trial court's order denying the housing corporation's motion to compel arbitration and the record before us includes all evidence considered by the trial court, a reporter's transcript is not necessary. (*Bel Air Internet,*

*LLC v. Morales* (2018) 20 Cal.App.5th 924, 933–934.)  Absence of a transcript is not fatal to the housing corporation's appeal.

V

The chapter must arbitrate its claims against the housing corporation.  The reasonable interpretation of this record is that the international fraternity is an overarching and governing international organization, and the local chapter of this fraternity is merely a subordinate *fraternal component* of the international fraternity.

The international fraternity wanted arbitration, and so did the defendant housing corporation.  This was in effect a stipulation for arbitration.  On this record, the chapter was impotent to disagree.  The proper ruling would have been to grant the motion to compel arbitration.

Each chapter member signed the membership agreement containing the fraternity and chapter's terms and conditions.  The agreement requires members to arbitrate "any and all monetary, damage and/or membership disputes between you and your chapter and/or the Fraternity or involving any entity or person who is *affiliated* with the Fraternity . . ."  The italics are ours.

On October 29, 2018, the international fraternity's general counsel wrote the parties that the chapter did not have legal standing to sue the housing corporation, because the housing corporation was *affiliated* with the fraternity.  The international fraternity's counsel stated the fraternity "officially recognized" the housing corporation.  Citing the membership agreement's arbitration provision, the international fraternity made its directive clear:  the chapter must "immediately withdraw its

12

lawsuit and seek to resolve this dispute first by mediation, and if not successful, then by binding arbitration."

The chapter sought to ignore this letter's directive by claiming "Pi Kappa Alpha International is wrong." The chapter argued the arbitration clause "simply does not apply to this case, regardless of what the Pi Kappa Alpha International Fraternal Organization might think." But the subordinate chapter cannot disregard a clarification of the contract by the international fraternity of which the chapter is a component.

The chapter emphasizes the international fraternity delegated control over day-to-day operations to the chapter. This is undoubtedly true. Another provision in the membership agreement states:

> "Your chapter is locally self-managed, self-operated and self-financed. You and the Chapter are not supervised, managed, overseen or subject to control or direction by the Fraternity or any of its employees or volunteers. To the contrary, the Fraternity meets every two years at a convention where each chapter has a vote."

It is practical, no doubt, for the international fraternity to delegate day-to-day authority to the "large number of similarly-situated chapters throughout North America." The international fraternity may have slight interest in deciding, for instance, when the front windows of each chapter's house need washing.

But in its October 29, 2018 letter, which is in evidence and in the record, the international fraternity asserted its authority to make the large-scale policy decision about the principle of arbitration. The international fraternity wrote about "*the Fraternity*[*'s*] . . . dispute resolution procedures" in a commanding and assertive way.

This assertion of supervening power is consistent with the hierarchical command structure the rest of the record displays. For example, the chapter's first amended complaint alleged the chapter, "[w]ith the advice and consent of National . . . established a new House Corporation in October 2018 consistent with the guidelines of National."

The international fraternity's letter to the parties implies the fraternity has the authority to order the chapter to withdraw the lawsuit and to arbitrate the claims. The chapter submitted no evidence about its right to defy the international fraternity's instructions. The chapter president's declaration did not address the letter or the relationship between the chapter and the international fraternity. Nor did the chapter offer other evidence on this score. The chapter skirted the issue entirely.

On this record, limited though it may be, the chapter remains a subordinate and inferior component of the international fraternity. This record implies the chapter lacks legal power to disregard the instruction from the international fraternity.

In this court, the chapter continues to attempt merely to wave away the authority of the international fraternity. Its opposition brief claims the letter "erroneously conclud[ed] that the parties' dispute was subject to arbitration." There was, however, no evidence of "erroneous" communication in the record before the trial court or before us. This claim of error is a lawyer's argument in a brief. Factually, it lacks a basis.

The chapter also argues the letter's recognition of the housing corporation as "officially recognized by the International Fraternity" is "insufficient to suggest the kind of affiliate relationship that needs to exist between the [housing corporation]

and the International Fraternity." This argument fails. The same letter states the housing corporation was "affiliated with The Pi Kappa Alpha International Fraternity" and cites the arbitration provision. By plainly stating the housing corporation and the international fraternity had an affiliate relationship for purposes of the arbitration clause, the letter established that affiliate relationship from the perspective that counts: the perspective of the governing international fraternity.

The chapter also notes, in a passing parenthetical, the fraternity's position that the arbitration provision applies to the housing corporation has been "since abandoned." Again, this lawyer's argument lacks an evidentiary foundation in the record.

The chapter further argues "the letter nowhere mentions Defendant Helvey, which makes [it] abundantly clear the International Fraternity especially does not consider him an affiliate." This claim is incorrect because the letter instructs the chapter to withdraw the entire lawsuit and to begin mediation. The international fraternity did not distinguish between defendants. It stated the chapter lacked standing to continue the entire lawsuit, against both defendants. The fact the chapter sued Helvey in his individual capacity makes no difference, because its claims against Helvey and the housing corporation are based on the same facts and theories. (See *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1407–1408 [nonsignatory defendants to arbitration agreement could invoke the agreement when plaintiff's claims against all defendants were inherently inseparable and based on the same facts and theory].)

The international fraternity's letter clarifies the arbitration clause's scope in the context of the chapter's lawsuit against the

15

housing corporation.  There is no evidence suggesting the international fraternity has taken a different position.  The chapter cannot proceed as though the letter does not exist.  It must arbitrate these claims.

VI

The housing corporation has not waived its right to arbitrate.

A party claiming the other party has waived its right to arbitrate must show prejudice.  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203.)  A party does not waive this right merely by participating in litigation.  (*Ibid.*)  Prejudice arises when a party's conduct substantially undermines the public policy favoring arbitration, such as using discovery to gain information that party could not have gained in arbitration or waiting until the eve of trial to seek arbitration.  (*Id.* at p. 1204.)

The chapter did not demonstrate prejudice.  The housing corporation filed its motion to compel arbitration 11 days after the fraternity sent the letter instructing the parties to arbitrate the case.  The housing corporation filed its motion before the deadline to respond to the first amended complaint.  This litigation was in its infancy.  There was no prejudice.

Because we reverse the order denying the housing corporation's motion to compel arbitration, we need not and do not address the housing corporation's evidentiary objections to the chapter's opposition to the motion to compel arbitration.  We also do not address the housing corporation's request in its reply brief before us to strike or disregard unsupported assertions in the chapter's brief.

## DISPOSITION

The order is reversed and the matter remanded for the trial court to grant the motion to compel arbitration and to stay the case pending arbitration.  We award costs to the housing corporation and to Helvey.


WILEY, J.

We concur:


BIGELOW, P. J.


GRIMES, J.

17