Filed 6/28/24; certified for publication 7/23/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| NANCY HEARDEN et al., Individually and as Successors in Interest, etc., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> WINDSOR REDDING CARE CENTER, LLC, et al., <br><br> Defendants and Appellants. | C098736 <br><br> (Super. Ct. No. 198083) |

After coronavirus infections resulted in the deaths of a number of residents at a skilled nursing facility, some family members of the decedents, individually and as successors in interest, sued the facility (Windsor Redding Care Center, LLC) and its alleged alter egos (Shlomo Rechnitz, Brius Management Co., Brius, LLC,

1

Lee Samson, and S&F Management Company). As relevant here, defendants moved to compel arbitration based on four agreements signed by a family member rather than the decedent. The trial court denied the motion, finding that as to three of the agreements, there was no evidence the family signatory had authority to sign on behalf of the decedent; as to all four of the agreements, there was no evidence the family signatory agreed to arbitrate their individual claim; and as to one successor claim in which the family signatory had power of attorney, the trial court exercised its discretion to deny the motion to compel arbitration to avoid the possibility of conflicting results.

Defendants now contend the trial court erred in denying the motion to compel arbitration. Because defendants have not established trial court error or abuse of discretion, we will affirm the order denying the motion to compel arbitration.

BACKGROUND

Arthur Trenerry, Danny White, Charmaine Tappen, and Ada Riggs died in 2020 while residents at Windsor Redding Care Center (the facility). Arthur's wife Johanna Trenerry had signed documents for Arthur's admission to the facility, including an arbitration agreement. Danny's son Damon White, Charmaine's son Charles Balding, and Ada's husband Leon Riggs had done the same for Danny,[1] Charmaine, and Ada, respectively. Johanna, Damon, Charles, and Ada's sons sued defendants, asserting individual and successor claims. The first amended complaint contained causes of action for elder abuse, negligence, violation of the Patient's Bill of Rights (Health & Safety Code, § 1430), unfair business practices, wrongful death, and fraud.

Defendants moved to compel arbitration. The motion was supported by the declaration of Jeanine Holt, custodian of records for the facility. Attached to the Holt

_____

[1] We will refer to family members by their first names for clarity.

2

declaration were arbitration agreements for Arthur, Danny, Charmaine, and Ada, along with a durable power of attorney for Ada's health care.

The arbitration agreement for Arthur stated it was between the facility and Johanna, for herself or as the legal representative and/or agent for Arthur, in conjunction with Arthur's admission to the facility and the provision of nursing facility services by the facility to Arthur. According to the agreement, the parties agreed to arbitrate any dispute as to medical malpractice and any other dispute relating to or arising from the services or health care by the facility, including claims for fraud, negligence, gross negligence, and violations of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (the Elder Abuse Act), the Unfair Competition Act (Bus. & Prof. Code, § 17200), or Health and Safety Code section 1430. The agreement added that it would bind the heirs, representatives, executors, administrators, successors and assigns of the parties, whose claims may arise from or relate to any services provided by the facility. The signature line for resident was blank, and above the signature line for legal representative/agent, the document stated: "By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent in executing and delivering of this arbitration agreement. I acknowledge that the Facility is relying on this representation. I also acknowledge that pursuant to the terms of this agreement, any claims that I may assert in my personal capacity that arise out of or relate to the provision of or failure to provide any services (medical or otherwise) or goods by the Facility to the Resident or the admission agreement are governed by this arbitration agreement." Johanna signed the arbitration agreement on the line for legal representative/agent.

Damon's declaration submitted in opposition to the motion averred that Damon signed the arbitration agreement for Danny. The terms of that arbitration agreement were the same as for Arthur. The signature line for resident was blank and Damon signed on the line for legal representative/agent.

The arbitration agreement for Charmaine stated it was between the facility and Charles, for himself or as the legal representative and/or agent for Charmaine. The terms of that agreement were the same as for Arthur. The signature line for resident was blank and Charles signed on the line for legal representative/agent.

The arbitration agreement for Ada Riggs was different. It stated that any dispute as to medical malpractice and any dispute between Ada and the facility would be determined by arbitration. The agreement excluded causes of action under Health and Safety Code section 1430. It appears that Ada's husband Leon signed on the line for resident. A durable power of attorney for the health care of Ada Riggs stated that Ada appointed Leon as her attorney in fact to make health care decisions for her.

The trial court denied the motion to compel arbitration. It found that defendants presented no evidence Johanna, Damon, or Charles had authority to sign the arbitration agreements on behalf of the decedents. In addition, the trial court ruled that because Johanna, Damon, Charles, and Leon signed the arbitration agreements as legal representatives/agents and not in their individual capacities, the agreements did not bind them as to their individual wrongful death claims.

Regarding the arbitration agreement for Ada, the trial court ruled it was valid because Leon had a durable power of attorney and the arbitration agreement covered the successor claims brought on behalf of Ada. But the trial court nevertheless exercised its discretion to deny the motion as to those claims under Code of Civil Procedure section 1281.2, subdivision (c)[2] due to the possibility of conflicting rulings if Ada's

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

successor claims proceeded to arbitration while all the other claims were addressed in court.[3]

## STANDARD OF REVIEW

When a motion to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the trial court must determine whether a valid agreement exists, and if any defense is asserted, whether the agreement is enforceable. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) The trial court sits as a trier of fact, weighing the evidence submitted to reach a final determination. (*Engalla v. Permanente Medical Group, In*c. (1997) 15 Cal.4th 951, 972.) On appeal, we review issues of law de novo and the trial court's factual findings under the substantial evidence standard. (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 811 (*Kinder*).) Where the facts are undisputed, we independently review the case to determine whether a valid arbitration agreement exists. (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1086 (*Valentine*); *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 (*Flores*).)

To the extent the trial court exercised its discretion under section 1281.2, subdivision (c) based on common questions of law or fact, we review the decision for abuse of discretion. (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 840 (*Avila*).)

## DISCUSSION

### I

We begin with defendants' contentions pertaining to the arbitration agreement signed by Leon on behalf of Ada.

---

[3] Leon is not a named plaintiff in the first amended complaint. Ada's sons Larry and Robert are the named plaintiffs for the Riggs family.

5

Defendants contend the trial court incorrectly believed it was required, under section 1281.2, subdivision (c), to deny the portion of the motion pertaining to Leon's agreement. We do not interpret the trial court's ruling in that way. Although the trial court used the word "require" in explaining its ruling, it also expressly stated that it had discretion to deny the motion. It found there was a possibility of conflicting rulings and it exercised its discretion to deny the motion.

The first amended complaint alleged injuries to Ada and also to her sons. The claims for injuries to Ada are survivor claims, i.e., claims for relief that belonged to Ada, are based on her legal rights, survived her death, and passed to her successors in interest. (*Brenner v. Universal Health Services of Rancho Springs, Inc.* (2017) 12 Cal.App.5th 589, 605 & fn. 9; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1264 (*Quiroz*).) But the wrongful death cause of action alleged injuries to Ada's sons personally. (*Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 844 (*Ruiz*); *Avila, supra*, 20 Cal.App.5th at p. 844; *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 (*Daniels*).) The arbitration agreement signed by Leon did not state it applied to claims other than survivor claims. Moreover, Ada's sons did not sign, and are not parties to, the arbitration agreement. Ada's sons are third parties to the arbitration agreement with regard to their wrongful death claims. (See *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 474 [a wrongful death action by patient's husband and sons was not subject to arbitration where the husband did not sign the arbitration agreements in his personal capacity and the sons did not sign it at all].)

Section 1281.2, subdivision (c) gives a trial court discretion to deny a motion to compel arbitration as to all or part of an arbitrable controversy when "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (See *Daniels, supra*, 212 Cal.App.4th at p. 679; *Valentine, supra*, 37 Cal.App.5th at p. 1084; *Laswell v.*

*AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1409.)  The arbitration agreement signed by Leon said it covered any dispute between Ada and the facility.  The elder abuse cause of action was such a dispute.  (See *Quiroz, supra*, 140 Cal.App.4th at p. 1284.) It arose out of the same facts as the wrongful death cause of action.  Because Ada's sons are third parties to the arbitration agreement with regard to their wrongful death claim, and the wrongful death claim arose from the same facts as Ada's elder abuse claim, which the trial ruled was arbitrable, the trial court had discretion under section 1281.2, subdivision (c) to deny defendants' motion to avoid conflicting rulings.  (§ 1281.2; *Avila, supra*, 20 Cal.App.5th at pp. 837-839, 845 [no abuse of discretion in denying motion to compel arbitration under section 1281.2, subdivision (c) where there was a strong possibility of inconsistent rulings if survivor claims (negligence and elder abuse) were arbitrated while a wrongful death claim was litigated]; *Daniels,* at pp. 677-678, 686-687; see *Valentine,* at pp. 1083, 1090.)

The trial court appropriately exercised its discretion in denying the motion to compel arbitration.

Defendants nevertheless argue the trial court was precluded from exercising such discretion because the first amended complaint asserted professional negligence under section 1295.[4]  Section 1281.2, subdivision (c) -- affording the discretion to deny arbitration to avoid conflicting rulings -- does not apply "to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295."  (§ 1281.2, subd. (c).)  Section 1295 governs agreements to arbitrate medical malpractice or professional negligence claims in medical services contracts with

---

[4]  Plaintiffs suggest forfeiture, claiming defendants did not assert this argument pertaining to section 1295 in the trial court.  But defendant's trial counsel argued the application of section 1295 at the hearing on the motion to compel arbitration, and plaintiffs' counsel responded to it.

7

health care providers.  (*Daniels, supra*, 212 Cal.App.4th at p. 682.)  It is part of the Medical Injury Compensation Reform Act of 1975, and its purpose is to encourage and facilitate arbitration of medical malpractice claims.  (*Daniels,* at p. 682.)

Under section 1295, a patient who signs an arbitration agreement with a health care provider may bind heirs to arbitrate a wrongful death claim in a case where the primary basis for the claim sounds in professional negligence.  (*Avila, supra*, 20 Cal.App.5th at pp. 841-842; accord *Ruiz, supra*, 50 Cal.4th at p. 850.)  But if the primary basis sounds in elder abuse, section 1295 does not apply.  (*Avila,* at p. 842.)  Professional negligence is a negligent act or omission by a health care provider within the scope of licensed service that proximately causes personal injury or wrongful death.  (§ 1295, subd. (g)(2).)  Whereas elder neglect, a form of elder abuse, refers to the failure to provide medical care.  (Welf. & Inst. Code, § 15610.07, subd. (a)(1); *Delaney v. Baker* (1999) 20 Cal.4th 23, 34, 41; accord *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783; *Avila, supra*, 20 Cal.App.5th at p. 843.)  It includes a failure to provide for personal hygiene, food, clothing, shelter, and medical care; a failure to protect from health and safety hazards; and a failure to prevent malnutrition or dehydration. (*Avila,* at p. 843.)  Elder neglect does not refer to substandard performance of medical services but rather the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations.  (*Avila,* at p. 843; see *Fenimore v. Regents of University of California* (2016) 245 Cal.App.4th 1339, 1348-1349.)

The elder abuse cause of action asserted in the first amended complaint alleged the failure to adequately staff the facility, provide basic custodial care to residents, monitor residents, provide sufficient equipment and training to prevent the spread of COVID-19 in the facility, and enact or comply with policies and procedures to prevent the spread of COVID-19 at the facility.  The negligence cause of action alleged the failure to provide adequate staffing, basic services to patients, care for patients' physical and mental health

8

needs, and protection from health and safety hazards. A cause of action for violation of the Patient's Bill of Rights also alleged a failure to provide services and adequate care. The cause of action for wrongful death incorporated the allegations in the foregoing causes of action and was based on death from COVID-19 that resulted from neglect.

While there may be some overlap between professional negligence and elder abuse in general (*Avila, supra*, 20 Cal.App.5th at p. 843), as alleged in this case, the primary basis for the wrongful death cause of action was not medical malpractice or professional negligence. The section 1295 exception to section 1281.2, subdivision (c) does not apply.

Given our conclusion that the trial court properly exercised its discretion in denying defendants' motion to compel arbitration as to Ada's sons under section 1281.2, subdivision (c), we need not address plaintiffs' alternate arguments.

II

Turning to the arbitration agreements signed by Johanna, Damon, and Charles, defendants contend their signatures established that they were agents of the decedents with authority to sign the agreements.

"The right to compel arbitration depends on the existence of an agreement to arbitrate. [Citation.] Whether a valid agreement to arbitrate exists is determined under applicable contract law. [Citation.] 'Generally, a person who is not a party to an arbitration agreement is not bound by it. [Citation.] However, there are exceptions. For example, . . . a person who is authorized to act as the [resident or] patient's agent can bind the [resident or] patient to an arbitration agreement. [Citations.]' " (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1073-1074 (*Rogers*).)

" ' "An agent is one who represents another, called the principal, in dealings with third persons." [Citation.] In California, an agency is "either actual or ostensible." ' [Citation.] Actual agency arises when the principal's conduct causes the agent reasonably to believe that the principal consents to the agent's act on behalf of the principal.

9

[Citations.]  Ostensible agency arises when the principal's conduct causes the third party reasonably to believe that the agent has the authority to act on the principal's behalf.  [Citation.]" (*Rogers, supra*, 75 Cal.App.5th at p. 1074.)

" '[A]n agency[, whether actual or ostensible,] cannot be created by the conduct of the agent alone; rather, conduct by the principal is essential to create the agency.' [Citations.]  ' " ' "The principal must in some manner indicate that the agent is to act for [the principal], and the agent must act or agree to act on [the principal's] behalf and subject to [the principal's] control." . . .' [Citations.]  Thus, the 'formation of an agency relationship is a bilateral matter.  Words or conduct by both principal and agent are necessary to create the relationship . . . .' " ' " (*Rogers, supra*, 75 Cal.App.5th at p. 1074.)  The party seeking to compel arbitration based on an agreement signed by an agent bears the burden of proving actual or ostensible agency.  (*Kinder, supra*, 91 Cal.App.5th at p. 812.)  That party "does not meet its burden of [proof] . . . when it does not present any evidence that the purported principal's conduct caused the agent or the third party to believe that the agent had the authority to bind the principal." (*Rogers,* at p. 1075. )

Defendants presented copies of the arbitration agreements through Holt's declaration.  But that, without more, was insufficient to establish agency.  (*Kinder, supra*, 91 Cal.App.5th at pp. 810, 813-815.)  The arbitration agreements show that the decedents did not sign them.  Although the family signatories signed them as legal representatives/agents and stated in the agreements that they were authorized to act as decedents' agents in signing the arbitration agreements, those facts alone do not establish actual or ostensible agency because a person does not become an agent of another merely by unilaterally saying so.  (*Kinder,* at pp. 809, 812-815.)  Conduct by the purported principal is required.  (*Rogers, supra*, 75 Cal.App.5th at pp. 1074-1075.)

Here, there is no evidence decedents authorized the family signatories to sign the arbitration agreements.  Nor is there any evidence that decedents did anything to cause

10

defendants to believe that the family signatories had the authority to act on decedents' behalf. Defendants point to the declarations the family signatories submitted in opposition to the motion to compel arbitration, but those declarations do not aver that decedents expressly authorized the family signatories to sign the arbitration agreements or that any conduct by decedents caused the facility to reasonably believe decedents consented to having the family signatories bind decedents to arbitration. Defendants have not established that the family signatories were actual or ostensible agents. (*Kinder, supra*, 91 Cal.App.5th at p. 813; *Rogers, supra*, 75 Cal.App.5th at pp.at pp. 1075-1076; *Valentine, supra*, 37 Cal.App.5th at pp. 1087-1090; *Flores, supra,* 148 Cal.App.4th at pp. 587-588.)

Defendants nevertheless seek to bind family signatories Johanna, Damon, and Charles to arbitration based on the doctrines of unclean hands and/or equitable estoppel. Defendants argue that if the family signatories had no authority to sign the arbitration agreements, defendants were misled and it would be unjust to allow the plaintiffs to avoid arbitration.

The doctrine of equitable estoppel provides an exception to the general rule that one cannot be compelled to arbitrate without being a party to an arbitration agreement. (*Mattson Technology, Inc. v. Applied Materials, Inc.* (2023) 96 Cal.App.5th 1149, 1156.) Equitable estoppel " 'requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it. [Citation.]' " (*Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1131.) The party asserting estoppel must prove all of these elements. (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1097.)

The arbitration agreements were between the facility and the family signatories as the purported legal representatives/agents of the decedents. The family signatories

11

did not sign the arbitration agreements in their individual capacities. There is no evidence decedents made any relevant representation or concealed any facts or intended defendants to act in reliance on any relevant facts. In addition, for reasons we have explained, defendants have not established that the family signatories were actual or ostensible agents of the decedents and had authority to make representations for them or to bind them. Defendants do not establish equitable estoppel.

The doctrine of unclean hands bars relief to a party who has engaged in misconduct directly related to the transaction or matter before the court. (*DeRosa v. Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1395; *Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 432; accord *Ditzian v. Unger* (2019) 31 Cal.App.5th 738, 747.) Defendants do not show how any alleged misrepresentation in a stand-alone arbitration agreement directly relates to the care of residents at the facility. Moreover, they do not cite authority applying the doctrine of unclean hands in a situation like the one here, where defendants seek to bind a decedent who did not sign an arbitration agreement and where there is no evidence the decedent authorized someone else to sign on their behalf.

Because defendants have not shown that the decedents were bound by the arbitration agreements signed by Johanna, Damon, and Charles, those agreements do not bind the decedents' heirs, representatives, executors, administrators, successors and assigns. (*Rogers, supra*, 75 Cal.App.5th at p. 1077.) For that reason, and because there is no evidence the family signatories had authority to sign the arbitration agreements on behalf of their siblings or children, the individual claims of Nancy Hearden, Irene Kelley, Sally Kelly, Matthew Trenerry, William Trenerry, Beverly Fuller, Anthony Trenerry, and Leonard Balding are not subject to the arbitration agreements signed by Johanna, Damon, and Charles. (*Ibid.*) In addition, those arbitration agreements do not bind the family signatories personally because they did not sign the agreements in their personal capacities.

DISPOSITION

The order of the trial court denying defendants' motion to compel arbitration is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
HULL, Acting P. J.

_____/S/_____
ROBIE, J.

Filed 7/23/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| NANCY HEARDEN et al., Individually and as Successors in Interest, etc., | C098736 |
| Plaintiffs and Respondents, | (Super. Ct. No. 198083) |
| v. |  |
| WINDSOR REDDING CARE CENTER, LLC, et al., | ORDER GRANTING REQUEST TO PUBLISH |
| Defendants and Appellants. |  |

APPEAL from a judgment of the Superior Court of Shasta County, Leonard J. LaCasse, Judge. Affirmed.

York Law Corporation, Wendy C. York, Daniel Jay; Reiner, Slaughter & Frankel, Russel Reiner; Kerhaw Talley Barlow, William A. Kershaw and Stuart C. Talley for Plaintiffs and Respondents.

Zarmi Law and David Zarmi Defendants and Appellants.

THE COURT:

1

The opinion in the above-entitled matter filed on June 28, 2024, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


_____/S/_____
HULL, Acting P. J.


_____/S/_____
ROBIE, J.


_____/S/_____
MAURO, J.