Filed 5/26/22  Alvarado v. S.D.S. Industries, Inc. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MA IRMA ALVARADO, | B310732 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV20856) |
| S.D.S. INDUSTRIES, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Epstein Becker & Green, Richard J. Frey, Carlos A. Becerra, Alice Kwak, for Defendants and Appellants.

Pairavi Law, Edwin Pairavi, Joshua M. Mohrsaz, for Plaintiff and Respondent.

# INTRODUCTION

Plaintiff Ma Irma Alvarado sued her employers, defendants S.D.S. Industries, Inc. and Timely Industries, for wrongful termination and other claims. Defendants moved to compel arbitration, presenting an arbitration agreement in English that Alvarado signed on the day of her termination. Alvarado opposed the motion, stating in a declaration that she spoke and read only Spanish, and that a human resources employee had misrepresented the nature of the arbitration agreement to her before she signed it. With their reply, defendants submitted an opposing declaration stating that the arbitration agreement was accurately described to Alvarado before she signed it. The trial court held that the arbitration agreement was void due to fraud in the execution and denied defendants' motion.

We affirm. Substantial evidence supports the trial court's findings, and the trial court did not abuse its discretion in denying defendants' request for an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

In June 2020, Alvarado filed a complaint asserting seven causes of action against defendants relating to age discrimination, harassment, retaliation, and wrongful termination. She alleged she was employed by defendants from February 2015 to June 2018, and she was a "loyal and hard-working employee who was abruptly fired . . . after reporting the on-going and relentless harassment she suffered . . . due to her age, which was fifty-two (52) at the time of her termination." Alvarado alleged that another employee repeatedly harassed and threatened her, and although Alvarado complained to her

2

supervisor, her concerns were dismissed. Alvarado alleged she "can only read and write in Spanish," but the supervisor nevertheless required her to sign a write-up in English that was "in direct retaliation for her numerous complaint[s] of discrimination." Alvarado alleged she was fired on June 18, 2018 for continuing to complain that the other employee was harassing her.

B.      *Motion to compel arbitration*

Defendants filed a motion to compel arbitration and to stay the matter. (Code Civ. Proc., §§ 1280, 1281.4.) They asserted that on the day of her termination, Alvarado signed an arbitration agreement that "mutually obligates [Alvarado and defendants] to arbitrate any claims against the other arising out of the employment relationship." The agreement stated, in part, "In consideration of Employee's continuing employment with Employer, Employer and Employee agree to final and binding arbitration of any and all claims or disputes between Employer and Employee, whether or not relating to the employment relationship," including common law disputes, "state and/or federal discrimination claims, [and] claims for wrongful termination."

Defendants asserted that the agreement was governed by the Federal Arbitration Act (FAA, 9 U.S.C. § 1, et seq.), as well as the rules and procedures of the American Arbitration Association (AAA).[1] They contended that under these rules the question of

---

[1] The arbitration agreement states in one section that "the Federal Arbitration Act governs the interpretation and enforcement of this Agreement." But in another section, under the heading "Law Governing Agreement," it states that the "Agreement will be governed and construed in accordance with

arbitrability, as well as any objections as to the scope or admissibility of the agreement, must be decided by arbitrator. Defendants further asserted that the arbitration agreement was neither procedurally nor substantively unconscionable.

C.    *Opposition*

Alvarado opposed the motion to compel arbitration, asserting that the arbitration agreement was unenforceable. She contended that she was induced to sign the arbitration agreement through fraud. Alvarado stated in her opposition and a declaration[2] that she was unable to read, write, or speak English. She stated that throughout her employment with defendants, documents were either presented to her in Spanish or translated for her by an employee, such as Obdulia Michel Pelayo in human resources. Alvarado said that on the day she was terminated, June 18, 2018, Pelayo told her she was being terminated and gave her a termination letter. Pelayo also told Alvarado she was required to sign the arbitration agreement, which was written in English. Alvarado stated in her declaration, "I asked if there was a Spanish version of the document because I could not understand it. Ms. Pelayo told me there was no Spanish version, and that it did not matter because I had to sign the document anyway.  [¶] I asked what the document said, and Ms. Pelayo told me it was just explaining that I would be receiving my final pay and vacation hours." Alvarado also stated, "Ms. Pelayo further told me I needed to sign the document on that day in order to receive my final pay and

the laws of the State of California."  This discrepancy is not important for purposes of the appeal.

[2] Alvarado's declaration was presented in Spanish with an English translation.

pay for my vacation hours. [¶] I did not have an opportunity to ask any other questions." Alvarado stated that no one explained the arbitration agreement to her, she never received a copy in Spanish, and she did not understand the nature of the arbitration agreement when she signed it.

Alvarado therefore asserted in her opposition that the arbitration agreement was procured through fraud and was unenforceable. She also argued that the arbitration agreement did not constitute a contract because it lacked consideration. She further asserted that the arbitration agreement was procedurally and substantively unconscionable, and the court, rather than the arbitrator, should determine arbitrability.

D.   *Reply*

In their reply, defendants asserted that the arbitration agreement was enforceable. They submitted a declaration by Pelayo, who stated that she gave Alvarado the documents in English, and "provided Alvarado with a description of each document in Spanish, including the Arbitration Agreement. I went through each section of the Arbitration Agreement and provided [Alvarado] with an oral translation in Spanish. I specifically recall informing [Alvarado] that by Signing the Arbitration Agreement, she would be waiving her right to pursue legal action against Defendants in court." Pelayo also stated, "At no point during the discussion did I inform Alvarado that she must sign the Arbitration Agreement in order to receive her final pay. In fact, I informed Alvarado of the exact opposite—that signing the Agreement was entirely voluntary and optional."

E.   *Court ruling*

There was no court reporter at the hearing on the motion to compel arbitration. Defendants later filed a proposed settled

statement, which the trial court certified.[3]  According to the settled statement, at the hearing the court "focused on the issue of the timing of the presentation and execution of the Arbitration Agreement (i.e. on the date of Plaintiff's termination)."  The settled statement said that "Defendants' counsel requested an evidentiary hearing" to allow the court to assess Alvarado's and Pelayo's credibility.  The court denied the request.  Defendants' counsel also asked to file additional briefing about the timing of the execution of the arbitration agreement, but the court denied that request as well.  The court took the matter under submission.

The court later issued a written ruling denying defendants' motion.  The court stated that defendants, as the moving party, had the burden to prove the existence of an arbitration agreement, and they had met that burden.  The court also found that Alvarado proved a defense to the enforcement of the agreement, stating, "The Court finds the arbitration agreement to be void as a result of fraud in the execution."  The court stated that Alvarado's limited ability to read and understand English, and her statements that no one provided a Spanish translation of

---

[3] A settled statement is a "record of the oral proceedings in the superior court" when the "designated oral proceedings in the superior court were not reported by a court reporter."  (Cal. Rules of Court, rule 8.137(b)(1)(A).)  An appellant's proposed settled statement must include "a statement of the points the appellant is raising on appeal," and "a condensed narrative of the oral proceedings."  (*Id.*, rule 8.137(d).)  A respondent may propose amendments to the proposed settled statement (*id.*, rule 8.137(e)(1)), and after addressing any disagreements about the content, the trial court certifies the settled statement for use on appeal.  (*Id.*, rule 8.137(h)).

6

the arbitration agreement, "suggests that she did not have a 'reasonable opportunity' to discover the true nature of the writing."

The court further stated, "[Alvarado] had been employed by Defendants for three years, and had come to rely on the benefits of that employment. While Defendants presumably could have approached [Alvarado] at any time during her employment, they chose to present [Alvarado] with an arbitration agreement at a moment of acute economic pressure, i.e., termination. Faced with the economic uncertainty that termination brings, [Alvarado's] access to her final pay and vacation payout was then expressly made conditional on her willingness to sign the arbitration agreement." The court stated that the information in Pelayo's declaration "does not change the undisputed fact that [Alvarado] was presented with the arbitration agreement on the same day that she was terminated, and the only arbitration agreement attached is an English language version."

The court therefore found that "the arbitration agreement is void due to fraud in the execution." And because the entire agreement was void, the provision that the arbitrator would determine arbitrability was "nonbinding."

Defendants timely appealed.

## DISCUSSION

Defendants contend that Alvarado was not fraudulently induced into signing the arbitration agreement, and therefore the court's order should be reversed. They also assert that the court erred in denying defendants' request for an evidentiary hearing, the arbitrator should decide any issues regarding enforceability of the arbitration agreement, and the arbitration agreement is

7

not unconscionable. Alvarado asserts that the trial court's ruling was correct. We find no error and affirm.

A court shall order arbitration "if it determines that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2.) Under the FAA and California law, an arbitration agreement is valid, irrevocable, and enforceable, save upon such grounds as exist for the revocation of any contract. (9 U.S.C. § 2; Code Civ. Proc., § 1281.) "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

When a court's order denying a motion to compel arbitration is based on a decision of fact, we review the order under a substantial evidence standard. (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 839-840; see also *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 544.) "[I]f there are material facts in dispute, we must accept the trial court's resolution of such disputed facts when supported by substantial evidence. [Citation.] We also must presume the court found every fact and drew every permissible inference necessary to support its judgment or order, and we must defer to the court's determination of credibility of the witnesses and weight of the evidence in resolving such disputed facts." (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 12.)

A.      *Fraud in the execution*

The trial court found that the arbitration agreement was void due to fraud in the execution. Fraud in the execution of a contract ""goes to the inception or execution of the agreement, so

8

that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*.”’” (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 (*Rosenthal*); see also *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 885-886 (*Najarro*).)

To establish fraud in the execution, a plaintiff must show that his or her signature on a contract “is negated by fraud so fundamental” that the plaintiff was “deceived as to the basic character of the documents” signed, and the plaintiff “had no reasonable opportunity to learn the truth.” (*Rosenthal, supra*, 14 Cal.4th at p. 425.) In *Rosenthal*, for example, 24 plaintiffs invested in mutual funds with defendant Great Western Financial Securities Corporation (GWFSC). Most plaintiffs mistakenly believed the GWFSC employees worked for Great Western Bank (GWB), with which the plaintiffs had an existing banking relationship. One plaintiff, Greco, stated in a declaration that she was “an 81-year-old Italian immigrant, who speaks ‘only a few words of English’ and ‘cannot read English at all.’” (*Id.* at p. 427.) GWFSC representatives convinced Greco and her daughter, Kasbarian (another plaintiff with limited English proficiency), to sign documents without telling the plaintiffs that they were agreeing to arbitration or giving up any rights. (*Id.* at pp. 427-428.)

The Supreme Court stated that the two plaintiffs’ “declarations, if believed (and interpreted, where ambiguous or self-contradictory, in plaintiffs’ favor), would establish facts sufficient to show reasonable reliance as an element of fraud in the execution of the client agreements. In light of plaintiffs’ prior relationship with GWB, which they were led to believe was also

9

the employer of [the GWFSC representatives], their limited ability to understand English, and [GWFSC's] representations that their oral recitals accurately reflected the terms of the agreements, plaintiffs would not have been negligent in relying on the GWFSC representatives instead of reading the agreements themselves." (*Rosenthal, supra*, 14 Cal.4th at p. 428.) "Under these circumstances, we conclude, the alleged fraud of GWFSC's representatives, if true, would have deprived Greco and Kasbarian of a reasonable opportunity to learn the character and essential terms of the documents they signed. (Rest.2d Contracts, § 163.)" (*Ibid*.) Because the trial court did not determine factual disputes in the case, however, the Supreme Court remanded the matter.

Similarly, in *Najarro, supra,* 70 Cal.App.5th 871, eight employees sued their employer, and after the employer moved to compel arbitration, the employees contended that the defendant used coercive tactics to induce the employees to sign the arbitration agreements. (*Id*. at p. 878.) One plaintiff, Serrano, only spoke Spanish; her ability to read Spanish was limited and she could not speak or read English. (*Id*. at p. 887.) A representative for the employer had Serrano sign documents without telling her what they were, saying they were "nothing important." (*Ibid*.) The Court of Appeal stated, "Given Serrano's inability to read either Spanish or English, the fact she was told that her arbitration agreement and other agreements were unimportant, statements pressuring her to sign ('do you want to work or not?'), a lack of an explanation as to what she was signing despite her professed inability to understand, and an omission of any factual dispute as to these issues, we conclude

10

that Serrano has adequately established fraud in the execution." (*Ibid*.)

Here, the facts follow a similar pattern. Alvarado spoke and read only Spanish, but the arbitration agreement was presented to her in English while she was in the process of being terminated. Alvarado stated that she did not know what the document was, so she asked Pelayo, whom Alvarado had relied upon in the past to translate documents for her. Pelayo told Alvarado that the document only explained that she would be receiving her final paycheck and vacation pay, and if she did not sign the document, she would not receive her final paycheck or vacation pay. Alvarado stated that she relied on Pelayo's statement and signed the document. This evidence was sufficient to show that Alvarado was deceived as to the nature of her act, and did not know what she was signing. (*Rosenthal, supra*, 14 Cal.4th at p. 415; *Najarro, supra*, 70 Cal.App.5th at pp. 885-886.)

Defendants assert that Alvarado is bound by the agreement even though she did not read it before signing it. They cite *Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686 (*Ramos*) for the proposition that ""one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him."" Defendants also cite *Rosenthal*, in which the Supreme Court stated, "one party's *unreasonable* reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract." (*Rosenthal, supra*, 14 Cal.4th at p. 423.)

11

Indeed, *Rosenthal* stated that "California law, like the Restatement [Second of Contracts], requires that the plaintiff, in failing to acquaint himself or herself with the contents of a written agreement before signing it, not have acted in an objectively unreasonable manner.  One party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had 'reasonable opportunity to know of the character or essential terms of the proposed contract.' (Rest.2d Contracts, § 163.)" (*Rosenthal, supra*, 14 Cal.4th at p. 423.) Relying on this principle, in *Ramos* the Court of Appeal held that fraud in the execution occurred when a car buyer reasonably relied on an inaccurate Spanish translation of an English contract.  (*Ramos, supra*, 242 Cal.App.4th at p. 690.)

According to Alvarado's declaration, she had no opportunity to discover the character of the document—she asked Pelayo what it was, because Pelayo had translated documents for Alvarado in the past.  Pelayo misrepresented the nature of the document, and told Alvarado she had to sign it in order to receive her final pay.  Substantial evidence therefore supported the trial court's finding that Alvarado's reliance on Pelayo's statements was not unreasonable.

Defendants further assert that they presented evidence to contradict Alvarado's version of events.  However, "under California law, the testimony of a single witness, even a party, may alone constitute substantial evidence." (*Chase v. Wizmann* (2021) 71 Cal.App.5th 244, 257.)  Moreover, we do not disturb the court's factual determinations.  "Even though contrary findings could have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence

12

is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.)[4]

B. *No evidentiary hearing was required*

At the hearing on the motion, the court denied defendants' request to hold an evidentiary hearing. Defendants assert that the court abused its discretion by doing so. Notably, they do not contend that any new or different evidence would have been presented at such a hearing. We find no abuse of discretion.

A petition to compel arbitration "shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions." (Code Civ. Proc., § 1290.2.) Thus, "the facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion." (*Rosenthal, supra*, 14 Cal.4th at pp. 413-414.) The Supreme Court in *Rosenthal* rejected the

---

[4] In their reply brief, defendants argue that Alvarado "concedes" certain issues as defendants presented them in the settled statement, and they assert that Alvarado "mischaracteriz[es] evidence in the Settled Statement," "introduce[es] evidence not included in the Settled Statement," and "improperly relies on evidence outside of the Settled Statement." These arguments misapprehend both the nature of appellate review and the purpose of a settled statement. The burden is on defendants, as the appellants, to demonstrate that the trial court erred (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609); Alvarado does not have a burden to disprove defendants' contentions of error. In addition, a settled statement is a summary of oral proceedings in the trial court (Cal. Rules of Court, rule 8.137(b)(1)(A)), and is only one part of an appellate record. A respondent is not barred from relying on the entire record in contending that the trial court's ruling was correct.

contention that a "summary bench trial" must be held where the evidence relating to an arbitration agreement is in conflict, stating, "There is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony." (*Id*. at p. 414.) The court continued, "Nonetheless, we agree that where—as is common with allegations of fraud such as are made here—the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination. As the trial court here remarked, 'it's pretty difficult to weigh credibility without seeing the witnesses.'" (*Rosenthal, supra*, 14 Cal.4th at p. 414.)

Here, although some facts were disputed, the issues were relatively simple. The court relied on the undisputed evidence before it, noting, for example, that even though Alvarado had been employed with defendants for three years, they waited to present her with an arbitration agreement (in a language she could not speak or read) until she was in the process of being terminated. The parties do not agree about how the arbitration agreement was explained to Alvarado, in that Alvarado stated that Pelayo misrepresented the nature of the document to her, and Pelayo stated that she accurately represented the nature of the document. However, defendants do not suggest that any additional or different evidence would have been presented at an evidentiary hearing. The court acted within its discretion in determining that the declarations provided sufficient information

14

to determine the issues, and additional testimony on the matter was unnecessary.

Thus, this case is different than *Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79 (*Ashburn*), which defendants cite. There, the trial court granted the defendants' petition to compel arbitration without holding an evidentiary hearing. The Court of Appeal reversed, stating, "there was significant dispute about what appellants signed, how they came to sign it, and what they signed said—not to mention extensive evidence of the significant relationship [one defendant] had with each appellant before they signed anything," and "the parties do not even agree as to what the pertinent documents are even called." (*Id*. at p. 98.) The court held that the trial court should have conducted an evidentiary hearing, stating, "In light of the record here, we do not understand how the trial court could have made such a finding without an evidentiary hearing." (*Id*. at p. 95.)

*Ashburn* relied on *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754 (*Hotels Nevada*), in which the trial court denied the defendant's motion to compel arbitration. The trial court stated that a hearing eventually would be necessary to address the disputed facts, but it denied the motion based on allegations of fraud asserted in the pleadings instead of receiving evidence on the matter. (*Id*. at pp. 760-761.) The Court of Appeal reversed, stating that the trial court erred when it "denied appellant's motion to compel arbitration without the benefit of any evidence. Rather, it relied on the allegations contained in Hotels Nevada's unverified complaint in declining to find a valid and enforceable agreement to arbitrate. . . . Although the trial court appropriately foresaw that the issues raised by the

15

complaint 'may require something in the nature of a hearing or trial in this court,' it erred by denying the motion to compel arbitration on the basis of the complaint's allegations instead of a factual determination made after such a hearing." (*Id*. at pp. 762-763.)

Here, the issues were not as complicated as those in *Ashburn* or *Hotels Nevada*, and unlike *Hotels Nevada*, the trial court made an appropriate factual finding. As *Rosenthal* stated, often the "better course" is to hold an evidentiary hearing in cases in which potential fraud is at issue. However, the evidence presented on the relatively straightforward issues here was sufficient to allow the court to determine that a decision could be made without additional testimony. We find no abuse of discretion.

C.      *The court properly decided enforceability*

Defendants further contend that the issue of arbitrability should have been decided by the arbitrator, because under AAA rules the arbitrator has the power to decide his or her own jurisdiction. However, "claims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law. If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy," and it is appropriate for the trial court to determine arbitrability. (*Rosenthal, supra*, 14 Cal.4th at p. 416; see also *Hotels Nevada, supra*, 144 Cal.App.4th at pp. 763-764 [where "the entire contract is void at its inception because of fraud, then the parties have not agreed to anything, including the arbitration of any controversy"]; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 774 [same].) Here, because Alvarado alleged

16

fraud in the execution of the contract, the trial court did not err in determining arbitrability.[5]

## DISPOSITION

The court's order is affirmed.  Respondent is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.

---

[5] Because we affirm the court's order, we do not address the parties' alternative arguments regarding unconscionability of the arbitration agreement.