Filed 3/1/23  Shook v. S-H Huntington Terrace OPCO CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LLOYD SHOOK et al., | |
| Plaintiffs and Respondents, | G061445 |
| v. | (Super. Ct. No. 30-2021-01202280) |
| S-H HUNTINGTON TERRACE OPCO, | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Giovanniello Law Group, Alexander F. Giovanniello, Thomas C. Swann and Martin Boags for Defendants and Appellants.

Moran Law, Michael F. Moran, Lisa Trinh Flint, David E. Ramirez, and Suzan N. Tran for Plaintiffs and Respondents.

\*          \*          \*

Defendants S-H Huntington Terrace OPCO LLC doing business as Huntington Terrace (Huntington Terrace), MSL Community Management, LLC, and MBK Senior Living, LLC appeal from an order denying their motion to compel arbitration. Defendants are the owners, operators, managers, and/or licensees of a residential care facility for the elderly where Lloyd Shook (decedent) was admitted. Prior to his admission, plaintiff Kris Shook, decedent's son, signed an admissions agreement, which included an arbitration provision. After decedent passed away, plaintiffs Kris Shook and Shauna Shook, decedent's children, initiated an action against defendants and other third party defendants.[1] Their complaint asserted decedent's survivor tort claims and plaintiffs' individual claims.

The court denied defendants' motion to compel arbitration because it determined decedent was not bound by the arbitration agreement contained in the admissions agreement. Even assuming a valid arbitration agreement existed, the court denied the motion due to the possibility of inconsistent rulings given plaintiffs' individual claims and the claims against the third party defendants. (Code Civ. Proc., § 1281.2, subd. (c).)[2]

On appeal, defendants contend the court erred because Kris acted as decedent's ostensible agent when he executed the admissions agreement. They also argue the court could not sever the arbitration provision from the admissions agreement because the substantive provisions of the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA) apply. Finally, they claim there are no facts to support the possibility of inconsistent rulings and that the court should have stayed the litigation pending the arbitration.

---

[1]     Because plaintiffs share the same last name, we refer to them by first name to avoid confusion. No disrespect is intended.

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2

We disagree with defendants' contentions and affirm the order. Defendants did not meet their burden of proving the existence of a valid arbitration agreement, and the FAA does not apply until the existence of an enforceable arbitration agreement is established. We accordingly need not consider whether arbitration would have been inappropriate due to the possibility of inconsistent rulings.

FACTS

*The Arbitration Agreement*

In August 2019, decedent was admitted to Huntington Terrace, an assisted living facility. Prior to his admission, decedent, decedent's wife, and Huntington Terrace entered into an assisted living residence and service agreement (the Admissions Agreement). The Admissions Agreement included an arbitration provision, which stated that agreeing to arbitration was not a condition of admission to Huntington Terrace. But if the signing party initialed the arbitration provision, he or she "agree[d] that any and all claims and disputes arising from or related to [the Admissions Agreement] or to . . . residency, care or services at Huntington Terrace" would be resolved by arbitration. The arbitration provision also stated that "[t]he dispute will be governed by the laws of California."

Neither decedent nor his wife signed the Admissions Agreement, which is central to this appeal. Instead, Kris, decedent's son, signed the Admissions Agreement. Kris signed the last page of the Admissions Agreement above the line that stated, "Authorized Representative." He also wrote "SON POA" above the line that stated, "Relationship to Resident(s)." He further initialed the arbitration provision.

*Plaintiff's Complaint*

In May 2021, plaintiffs filed a complaint against defendants and other third parties, which are not parties to this appeal or to the Admissions Agreement. Defendants

3

are alleged to be the owners, operators, managers, and/or licensees of a residential care facility while the third parties are alleged to be the owners, operators, managers, and/or licensees of a skilled nursing facility. According to the complaint, defendants provided substandard care resulting in decedent's injuries and death.

The complaint asserts six causes of action for: (1) elder abuse; (2) negligence; (3) violation of Health and Safety Code section 1430, subdivision (b); (4) willful misconduct; (5) negligent infliction of emotional distress; and (6) wrongful death. The first through fourth causes of action were brought by decedent through his successor-in-interest, Kris. But the fifth cause of action (negligent infliction of emotional distress) was brought by Shauna in her individual capacity. Likewise, the sixth cause of action (wrongful death) was brought by Kris and Shauna in their individual capacities. All of the causes of action were brought against all of the defendants, except decedent's third cause of action and Shauna's fifth cause of action. The latter claims were asserted against the third-party defendants only.

*Defendants' Motion to Compel Arbitration and the Court's Order*

In December 2021, defendants filed a motion to compel arbitration contending plaintiffs' claims were subject to the arbitration provision in the Admissions Agreement. Among other things, they argued the FAA applied and that Kris had authority to execute the arbitration agreement as decedent's authorized agent. In support of the motion, defendants included plaintiffs' verified responses to defendants' requests for admission (RFAs). The RFAs propounded on decedent included the following request: "Admit YOU authorized Kris Shook to execute the [Admissions Agreement] presented to YOU on August 5, 2019 relating to YOUR admission to HUNTINGTON TERRACE." Decedent through his successor-in-interest, Kris, admitted this was true. Likewise, the RFAs propounded on Kris included the following request: "Admit YOU

4

had DECEDENT'S authority to execute the [Admissions Agreement] relating to DECEDENT'S admission to HUNTINGTON TERRACE." Kris admitted this was true.

After a hearing on the motion, the court ordered the parties to file supplemental briefs, which they filed in April 2022. In May 2022, the court denied defendants' motion. First, the court held the FAA did not apply because the relevant arbitration provision did not reference the FAA. Instead, the arbitration provision indicated the dispute would be governed by California law.

Second, the court found there was insufficient evidence establishing Kris had authority to bind decedent to the arbitration agreement. The court emphasized there was no admission that Kris was authorized to make healthcare decisions on decedent's behalf. Citing *Hutcheson v. Eskaton FountainWood Lodge* (2017) 17 Cal.App.5th 937 (*Hutcheson*), the court noted there was evidence Kris "was not authorized to act as . . . decedent's agent for health decisions, and by extension, to agree to arbitration." In reaching this conclusion, the court cited Kris's declaration where he testified that he did not have a healthcare power of attorney or authority to make healthcare decisions for decedent. The court also cited Kris's general power of attorney. With respect to the discovery responses, the court did "not construe the response to the request for admission as evidence of an actual act by . . . decedent to establish [Kris's] ostensible agency."

Finally, even assuming a valid arbitration agreement existed, the court denied the motion pursuant to section 1281.2, subdivision (c) due to the possibility of inconsistent rulings. The court noted decedent's survivor tort claims arose out of the same transaction or series of related transactions concerning Kris and Shauna's individual claims (wrongful death and negligent infliction of emotional distress), as well as other claims against the third-party defendants.

Defendants timely appealed.

5

DISCUSSION

Defendants contend the court erred by denying their motion to compel arbitration because Kris had authority to execute the Admissions Agreement, which included the relevant arbitration provision. They also argue the substantive provisions of the FAA apply and prohibited the court from severing the arbitration provision from the Admissions Agreement. Finally, they contend there was no possibility of inconsistent rulings and the court could have stayed the litigation pending outcome of the arbitration. For the reasons below, we disagree and affirm the order.

*Kris's Lack of Authority to Bind Decedent to an Arbitration Agreement*

The right to compel arbitration depends on the existence of a valid arbitration agreement (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843), and the party seeking to compel arbitration bears the burden of proving a valid agreement exists (*id*. at p. 844). "'Generally, a person who is not a party to an arbitration agreement is not bound by it. [Citation.] However, there are exceptions. For example, . . . a person who is authorized to act as the [resident or] patient's agent can bind the [resident or] patient to an arbitration agreement.'" (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1074 (*Rogers*).)

Under California law, "[a]n agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) "An agency [can be] either actual or ostensible." (Civ. Code, § 2298.) Actual agency arises "when the agent is really employed by the principal." (Civ. Code, § 2299.) Ostensible agency arises "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300.) An agency, whether actual or ostensible, cannot be created by the agent alone. (*Rogers*, *supra*, 75 Cal.App.5th at p. 1074.) Instead, "'"[w]ords or conduct *by both principal and agent* are necessary to create the relationship"'" because formation of an agency

6

relationship is bilateral. (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 588.) "The burden of proving that a purported agent had the authority to act for the purported principal in a particular circumstance lies with the persons dealing with the agent." (*Rogers*, at pp. 1074-1075.) Agency is a factual question, but we review the court's ruling de novo to determine if agency and a valid arbitration agreement exist where the facts, as here, are undisputed. (*Id.* at p. 1072.)

Here, defendants do not dispute there was no actual agency. Instead, they argue Kris acted as decedent's ostensible agent when he executed the Admissions Agreement. As noted, *ante*, Kris signed the Admissions Agreement on the line where it stated, "Authorized Representative" and wrote the words, "SON POA" on the line where it stated, "Relationship to Resident(s)." But Kris could not become his father's ostensible agent by simply representing himself as such. An agency relationship "'cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency.'" (*Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1173; see *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 302 [status of representative as next of kin does not authorize him or her to bind the principal to an arbitration agreement].)

Defendants point to only one piece of evidence to support their assertion of an ostensible agency—plaintiffs' responses to the RFAs. They emphasize decedent through his successor-in-interest, Kris, admitted he authorized Kris to execute the Admissions Agreement. Likewise, Kris admitted he had authority from decedent to execute the Admissions Agreement. But defendants cite no authority, and we are aware of none, finding discovery responses provided by an agent are evidence of an ostensible agency. Kris's admission, which was made on his own behalf, could not create an agency relationship because "the establishment of the agency also requires conduct on the part of [decedent] conferring that status." (*Flores v. Evergreen at San Diego, LLC*, *supra*, 148 Cal.App.4th at p. 589.) With respect to decedent's discovery response, Kris

7

provided the response as decedent's successor-in-interest. By assuming the role of decedent's successor-in-interest, Kris did not become a different person (i.e., decedent). (*Peterson v. John Crane, Inc.* (2007) 154 Cal.App.4th 498, 507 [finding the plaintiff did not become a different person or party by assuming the role of successor-in-interest or legal heir and instead merely acquired the legal capacity to pursue particular legal theories].) The discovery responses are further insufficient to establish an ostensible agency because they were provided *after* Kris executed the Admissions Agreement. They do not prove defendants reasonably believed decedent authorized Kris to enter into the Admissions Agreement when he signed it. Indeed, defendants concede they served the discovery responses because it was not clear if Kris had authority to execute the Admissions Agreement.

Defendants also contend the court erred by finding the decision to arbitrate was a healthcare decision and that Kris lacked authority to make healthcare decisions for decedent. But the relevant question is whether Kris could bind decedent to an arbitration agreement as part of authorizing his admission to a residential care facility. Defendants have not proven this to be the case.

*Hutcheson, supra,* 17 Cal.App.5th 937 which the trial court cited, is instructive. In *Hutcheson*, the decedent executed a healthcare power of attorney and appointed her niece to make healthcare decisions. (*Id.* at pp. 941-942.) She later executed a personal care power of attorney authorizing her sister and niece to act for her on different subjects, but not healthcare decisions. (*Id.* at p. 942.) When admitting the decedent to a residential care facility for the elderly, the sister signed an admissions agreement containing an arbitration clause. (*Ibid.*) The court found the sister acted outside the scope of her authority under the power of attorney because admission to the facility was a healthcare decision and the sister had no authority to make healthcare decisions. (*Id.* at p. 941.) "As a result, [the sister's] decision to agree to arbitration as

8

part of admitting [the decedent was] void as she had no authority to execute an arbitration agreement as part of making a health care decision." (*Id.* at p. 957.)

Like the sister in *Hutcheson*, Kris did not have the authority to make healthcare decisions. In his declaration, Kris testified he did not have a healthcare power of attorney or authority to make healthcare decisions for decedent. Instead, a "Community Representative" told him he was allowed to sign the Admissions Agreement on decedent's behalf. While Kris had a general power of attorney to make financial decisions for decedent, defendants do not argue Kris had authority to make healthcare decisions or that the general power of attorney conferred this authority. (See *Theresa D. v. MBK Senior Living LLC* (2021) 73 Cal.App.5th 18 [daughter admitting mother to a residential care facility was not authorized to bind mother to an arbitration agreement where she did not have a durable power of attorney or similar authorization].)

Relying on *Gordon v. Atria Management Co., LLC* (2021) 70 Cal.App.5th 1020 (*Gordon*), defendants contend *Hutcheson* is distinguishable. In *Gordon*, the court found a durable power of attorney authorized a son to enter into an arbitration agreement where it specifically authorized entering into contracts regarding the principal's care in a residential facility and submitting claims to arbitration. (*Gordon*, at pp. 1028-1029.) Similar facts do not exist here, and defendants do not argue Kris was authorized to enter into the arbitration agreement pursuant to his general power of attorney.

For the foregoing reasons, defendants did not meet their burden of proving Kris had authority to execute the Admissions Agreement on decedent's behalf. They accordingly also failed to prove the existence of a valid arbitration agreement, which was contained in the Admissions Agreement.

*The Federal Arbitration Act*

Defendants next argue the court could not sever the arbitration provision from the Admissions Agreement because the FAA applies. While they concede the

procedural aspects of the FAA do not apply, they contend the substantive provisions apply because the Admissions Agreement evidences a transaction involving interstate commerce.

But "the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357.) Here, the threshold question is whether the arbitration agreement is enforceable. The FAA does not impact this analysis because "we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) As discussed, *ante*, the court correctly found defendants failed to establish an enforceable arbitration agreement. The FAA therefore does not apply.

*The Possibility of Inconsistent Rulings*

The parties finally disagree as to whether the court erred by denying defendants' motion due to the possibility of inconsistent rulings, even assuming a valid arbitration agreement existed. Pursuant to section 1281.2, subdivision (c), a court need not compel arbitration when "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (*Ibid*.) Having determined the court properly denied defendants' motion because Kris lacked authority to bind decedent to arbitration, we need not consider whether arbitration would have been inappropriate due to the possibility of inconsistent rulings.

10

DISPOSITION

The order is affirmed.  Plaintiffs shall recover their costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.