Filed 12/19/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANA FAIAIPAU, et al.,<br><br>     Plaintiffs and<br>     Respondents,<br><br>v.<br><br>THC-ORANGE COUNTY,<br>LLC, et al.,<br><br>     Defendants and<br>     Appellants. | A171351<br><br>(Alameda County<br>Super. Ct. No.<br>24CV069756) |

Jennifer Faiaipau and Faamalieloto Ana Faiaipau-Satelle, individually and as successors in interest to Ana Faiaipau (collectively, plaintiffs), filed a complaint for negligence, neglect under the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act; Welf. & Inst. Code, § 15600 et seq.), fraud or breach of fiduciary duty, violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.), and wrongful death against THC-Orange County, LLC and Kindred Healthcare Operating, LLC (together, Kindred).[1]  Kindred moved to compel arbitration of all plaintiffs' claims.  The trial court granted Kindred's motion as to the survivor claims Jennifer and

---

[1] Like the parties, we refer to the plaintiffs by their first names to avoid confusion.

1

Faamalieloto filed as Ana's successors in interest but denied it as to the claims Jennifer and Faamalieloto filed in their individual capacities for wrongful death, fraud, and violation of the UCL. The trial court also stayed litigation of Jennifer and Faamalieloto's individual claims pending the conclusion of the arbitration.

Kindred appeals, contending the trial court erred by denying arbitration of Jennifer and Faamalieloto's individual claims. Based on a California Supreme Court decision that was issued while this appeal was pending, *Holland v. Silverscreen Healthcare, Inc.* (2025) 18 Cal.5th 364 (*Holland*), Kindred is correct that the trial court should have compelled arbitration of the wrongful death claim. But Kindred has failed to demonstrate error in the denial of arbitration of Jennifer and Faamalieloto's fraud and UCL claims. We will therefore modify the trial court's order to also compel arbitration of the wrongful death claim and affirm the order as modified.

## BACKGROUND

According to plaintiffs' complaint, Ana was born in 1944. She underwent heart surgery in January 2023 and was placed on a ventilator and feeding tube while she recovered. In March 2023, Ana was transferred to Kindred, a long-term acute care hospital, for care during her recovery. The expectation was that Kindred would wean Ana off the ventilator and provide dialysis treatment.

Because of inadequate equipment and staff training, Kindred withheld dialysis treatment from Ana, which led to

2

swelling, discomfort, and harm to her health. Kindred failed to provide Ana proper nutrition through her feeding tube, causing malnutrition and weight loss. Kindred staff did not check on Ana for long periods, resulting in her sitting in her own feces for hours at a time. Staff also failed to reposition or turn her to prevent the progression of pressure ulcers.

In April 2023, Ana's ventilator began beeping and flashing red while her family was visiting her. No staff responded until Ana's family yelled and shouted for help. Around 4:30 a.m. the next day, Ana's ventilator was disconnected by staff or became disconnected. No staff checked on her for hours. When staff found her unresponsive at 10:55 a.m., they resuscitated her. But Ana had suffered a severe anoxic brain injury as a result of the disconnection of the ventilator. Ana's severe anoxic brain injury caused her death shortly thereafter.

Jennifer and Faamalieloto are Ana's daughters and successors in interest. They filed a complaint against Kindred in March 2024, alleging five causes of action. The first cause of action, labeled as one for custodial negligence/negligence per se, alleges that Kindred violated its duties to provide respiratory services under state and federal regulations applicable to acute care hospitals, including California Code of Regulations, title 22, sections 70405, 70407, 70615, 70619, and 70621, and 42 C.F.R. section 482.57. These breaches caused Ana to sustain physical injuries, great mental and physical suffering, and death.

The second cause of action, labeled as one for neglect of an elder and dependent adult in violation of the Elder Abuse Act,

alleged that Ana was dependent upon Kindred for assistance with "grooming, bathing, hygiene, toileting, transfers, medication, eating, etc." Citing many of the same regulations as the negligence cause of action, the neglect cause of action further alleged that Kindred recklessly and willfully breached its duties in various ways, including by failing to properly monitor Ana's ventilator, which caused Ana to suffer malnutrition, negative health impacts from the lack of dialysis, and a severe anoxic brain injury that caused her death.

Plaintiffs requested punitive damages for the first two causes of action.

The third cause of action, labeled fraud/misrepresentation/ breach of fiduciary duty, alleged that Kindred made false representations and omissions to Ana and her family that Kindred would provide Ana total, professional care, including ventilator support, which influenced Ana and her family's decision to choose Kindred's facility for Ana. Plaintiffs further alleged that Kindred breached its duty by understaffing its facility, thereby allowing its financial conflict of interest to affect the level of care it provided. Plaintiffs alleged Kindred's physical abuse and neglect caused them to sustain injuries, pain, suffering, emotional distress, special damages, and, in Ana's case, death.

The fourth cause of action for violation of the UCL alleged that Kindred's conduct was a general business practice and a considered decision to promote its financial condition at the expense of its obligations to residents, including Ana. Plaintiffs

4

alleged these practices were unfair, unlawful, or fraudulent business practices in violation of Business and Professions Code section 17200 and asked for restitution of all funds they paid or paid on Ana's behalf.

Plaintiffs' fifth cause of action for wrongful death alleged that Jennifer and Faamalieloto are Ana's surviving children. It stated that it incorporated all previous allegations and additionally alleged that, as detailed in the complaint, Ana died from an anoxic brain injury as a proximate result of Kindred's reckless neglect of Ana. Jennifer and Faamalieloto were therefore deprived of Ana's companionship and services.

Kindred moved to compel arbitration of all the claims in the complaint. In support of its motion, Kindred provided a copy of a general power of attorney that Jennifer had given Kindred, documenting that Ana had granted Jennifer authority to, among other things, enter into contracts on Ana's behalf. Kindred also provided copies of an admission agreement and an arbitration agreement, both of which Jennifer signed as Ana's legal representative.

Article I of the arbitration agreement states, "It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both

5

parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration." This article contains verbatim the language mandated by Code of Civil Procedure section 1295, subdivision (a) for contracts providing for arbitration of disputes as to professional negligence of a health care provider.[2]

Article III states, "In addition to covering the kinds of claims referred to in Articles I and II, this ADR agreement applies to any legal claim or civil action arising out of or relating to your hospitalization, outpatient service, or any service rendered under Kindred's Admission Agreement, which is incorporated herein by this reference, (e.g. claims for refund, breach of contract, intentional tort, elder abuse, loss of consortium, unfair business practices, antitrust, interpretation of this ADR Agreement)." Article III further states, "This ADR agreement also covers any claim or action brought by a party other than you (e.g. an action by your spouse, legal representative, agent, heir) arising out of or relating to your hospitalization or outpatient service against the hospital or its employees."

Kindred argued in its motion that even though Jennifer and Faamalieloto did not sign the arbitration agreement, *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 (*Ruiz*), which applied section 1295 to wrongful death claims, made Ana's agreement to arbitrate

---

[2] Undesignated statutory citations are to the Code of Civil Procedure.

claims arising out of or related to her medical treatment binding on her heirs' claim for wrongful death. Kindred also argued that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applied and preempted any California law that barred arbitration of personal injury or wrongful death claims against nursing homes.

As relevant here, plaintiffs argued in opposition that Jennifer and Faamalieloto's wrongful death claim was not subject to arbitration. They asserted that Jennifer signed the arbitration agreement on behalf of Ana, not in her individual capacity, and Faamalieloto did not sign it at all. They also argued that the basis of the wrongful death claim was elder neglect, not professional negligence, so it was not arbitrable under section 1295 and *Ruiz*. Plaintiffs urged the trial court to exercise its discretion to deny arbitration because of the possibility of conflicting rulings on Ana's survivor elder neglect claim in arbitration and Jennifer and Faamalieloto's wrongful death claim in court, since both were based on the same facts.

The trial court granted Kindred's motion in part. It ruled that the FAA did not apply because the arbitration agreement expressly provided that it was governed by California law. It ordered to arbitration Ana's survivor claims for negligence and elder neglect, as well as the fraud and UCL claims to the extent that they were survivor actions on behalf of Ana, because they fell within the scope of the arbitration agreement that Jennifer signed on Ana's behalf. It denied arbitration of Jennifer and Faamalieloto's other claims and in particular the wrongful death claim because it was based on elder abuse, not professional

7

negligence, and because Kindred presented no evidence that Jennifer signed the arbitration agreement in her individual capacity or agreed to arbitrate her or Faamalieloto's individual claims. To avoid the possibility of conflicting rulings in the arbitration and litigation, the trial court chose to stay litigation of the non-arbitrable claims. Kindred appealed.

## DISCUSSION

"California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. [Citation.] Even so, parties can only be compelled to arbitrate when they have agreed to do so." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843 (*Avila*).) There are nonetheless some exceptions that allow third parties to obtain the benefit of or be bound by the obligations of an arbitration agreement, under the principles of agency and contract law. (See Knight, et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group (2025) ¶5:267 et seq.) In *Ruiz*, the California Supreme Court "identified an exception for certain wrongful death claims based on medical malpractice. If a patient agreed to arbitrate medical malpractice disputes in compliance with the arbitration provision of the Medical Injury Compensation Reform Act (MICRA) (codified as . . . § 1295), the patient-provider agreement may bind the patient's heirs in a

8

wrongful death action, even if the heirs themselves never agreed to arbitration." (*Holland*, *supra*, 18 Cal.5th at p. 370.)[3]

"Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law. [Citation.] The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Avila*, *supra*, 20 Cal.App.5th at pp. 843–844.) On appeal, " ' " '[t]here is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.' " ' [Citation.] The issue of whether a third party is bound by an arbitration agreement is a question of law." (*Id.* at pp. 839–840.)

Kindred advances two different lines of attack on the trial court's order denying arbitration of Jennifer and Faamalieloto's wrongful death, fraud, and UCL causes of action. First, it

_____

[3] Section 1295, subdivision (a) states that "[a]ny contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in" specified language, which appears as Article I of Kindred's arbitration agreement. Section 1295, subdivision (g)(2) defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

contends that the wrongful death claim must be arbitrated under section 1295 and *Ruiz* because it is based on professional negligence.  Second, Kindred argues in the alternative that even if section 1295 does not require arbitration of the wrongful death claim, the FAA preempts that rule and requires arbitration according to the terms of the arbitration agreement.  Although Kindred aims this second argument mostly at the wrongful death claim, Kindred extends it to Jennifer and Faamalieloto's fraud and UCL claims as well.

## I.  Wrongful Death

After Kindred filed its opening brief but before plaintiffs filed their respondents' brief, the California Supreme Court issued its decision in *Holland* dealing with the precise issue that Kindred raises here regarding the application of section 1295 and *Ruiz* to facilities that provide both medical care and custodial care of elder or dependent adults.  (*Holland*, *supra*, 18 Cal.5th 364.)  Because it controls the outcome here, we first review *Holland* in detail.

## A. *Holland*

*Holland* began its analysis by reviewing *Ruiz*, which had considered the interplay between the wrongful death statute and section 1295's allowance for arbitration of professional negligence claims.  (*Holland*, *supra*, 18 Cal.5th at p. 375.)  As *Holland* detailed, wrongful death claims are not survivor claims derivative of a decedent's claims, but rather "independent statutory actions accruing to a decedent's heirs for pecuniary injuries suffered by the loss of a relative.  [Citations.]  Because

10

wrongful death claimants are entitled to sue in their own right, not merely as successors in interest to their decedent, they are not ordinarily bound by any arbitration agreement the decedent may have signed." (*Ibid.*) However, "section 1295 by its terms applies to agreements to arbitrate disputes about ' " 'professional negligence' " ' — a term specifically defined, as relevant here, to include negligent acts or omissions that cause ' "a personal injury *or wrongful death.*" ' " (*Ibid.*) *Ruiz* concluded from section 1295's reference to wrongful death that the statute " 'contemplates that *all* medical malpractice claims, including wrongful death claims, may be subject to arbitration agreements between a health care provider and the patient,' provided that 'the language of the agreement manifests an intent to bind these claimants.' " (*Holland*, *supra*, 18 Cal.5th at p. 375.) *Ruiz* reasoned that this result "was consistent with the Legislature's purpose to promote arbitration to control the costs of medical malpractice suits" and "would avoid the practical difficulties and potential encroachment on a patient's privacy that would result from a rule that required a patient's heirs to sign an agreement respecting the provision of medical care." (*Id.* at p. 376.)

Holland then reviewed case law applying *Ruiz* to wrongful death suits against nursing homes or other long-term residential care facilities. (*Holland*, *supra*, 18 Cal.5th at p. 376.) One of the cases *Holland* reviewed was *Avila*, in which "plaintiffs brought elder abuse and wrongful death claims alleging that a long-term acute care hospital's failure to provide basic care and services resulted in a dislodged feeding tube that caused their father's

11

death." (*Id.* at p. 377.) *Avila* asked "whether 'the primary basis for the wrongful death claim sounds in professional negligence as defined by MICRA' or if 'the primary basis' for the claim is instead 'under the Elder Abuse . . . Act.' " (*Ibid.*) *Avila* held that there was "some area of 'overlap' " between the two types of claims but concluded the plaintiffs' claims there were not within *Ruiz* and section 1295's exception to the need for consent to arbitration because they alleged their father's death "was caused not by incompetence in the rendering of medical services, but instead by custodial neglect — that is, 'a "conscious and continued pattern of withholding the most basic care and services." ' " (*Ibid.*)

The *Holland* court then turned to the dispute before it, in which the parties both accepted that *Avila*'s "primary basis" rule was correct but disputed how to apply it. (*Holland, supra*, 18 Cal.5th at pp. 378, 382.) The *Holland* court discussed previous decisions in which it had dealt with the interplay between the Elder Abuse Act and professional negligence under MICRA, especially in relation to actions against health care institutions such as nursing homes that both perform custodial functions and provide medical care. (*Id.* at p. 379.) Recognizing the potential for confusion in such scenarios where a health care institution wears multiple hats, rendering both medical services and services as custodian of residents' general well-being, *Holland* drew a line between the two. (*Id.* at pp. 379–380.)

*Holland* explained that "only acts or omissions by a skilled nursing facility in its capacity as a health care provider fall under

12

the banner of professional negligence.  [Citation.]  By contrast, 'a failure to fulfill custodial duties owed by a custodian who happens also to be a health care provider . . . is at most incidentally related to the provider's professional health care services.'  [Citation.]  The failure to provide basic necessities, such as assistance in personal hygiene, food, hydration, or clothing, are paradigmatic examples of a failure to fulfill custodial duties.  [Citations.]  The same is true of a failure to provide an adequate and habitable living space or protect from routine safety hazards.  [Citations.]  Similarly, a failure of staff to attend to, monitor, or assist a resident in obtaining appropriate medical care generally falls on the custodial side of the line because such omissions involve 'not . . . the *undertaking* of medical services, but . . . the failure to *provide* medical care.' " (*Holland*, *supra*, 18 Cal.5th at p. 380.)  *Holland* later emphasized that the "critical question" when dealing with a facility that provides medical and other types of care is "whether the complaint alleges negligent acts or omissions by 'health care providers in their capacity as providers' rather than 'against custodians and caregivers . . . that may or may not, incidentally, also be health care providers.' " (*Id.* at p. 382.)  The court recognized that the distinction between medical and custodial acts "is not always an easy one to draw" but emphasized that "section 1295 and *Ruiz* do require lines to be drawn."  (*Ibid.*)

After discussing other issues not relevant here, *Holland* agreed with the defendants in that case that the plaintiffs' complaint lacked allegations explaining how the defendants'

13

alleged neglect caused the decedent's death.  (*Holland*, *supra*, 18 Cal.5th at p. 385.)  *Holland* therefore remanded to give the plaintiffs a chance to provide additional details to clarify whether their wrongful death claim was based on the negligent rendering of medical services and was therefore arbitrable, or whether it was based on the defendants' nonmedical neglect and was therefore not arbitrable.  (*Ibid.*)

## B. Analysis

The trial court did not have the benefit of the California Supreme Court's decision in *Holland* when it ruled.  In the absence of *Holland*, the trial court followed *Avila* and denied arbitration of Jennifer and Faamalieloto's wrongful death claim because it was based on elder abuse.  The trial court did not describe in detail the basis for its conclusion that the wrongful death claim was based on elder abuse, but it seems likely that it relied on Jennifer and Faamalieloto's assertion that their wrongful death claim was based on the same facts as Ana's survivor elder abuse claim and the statement in the complaint that Ana's death was caused by "reckless neglect."

While the trial court's ruling may have been defensible under *Avila*, it is no longer correct after *Holland*.  Jennifer and Faamalieloto's choice to plead their wrongful death claim as one based on elder abuse is not dispositive.  Rather, the determinative question is whether the wrongful death claim rests on acts or omissions by Kindred in its capacity as a health care provider or acts or omissions in Kindred's capacity as Ana's custodian and provider of basic necessities, such as personal

14

hygiene, food, hydration, clothing, safe living space, and access to medical care. (*Holland*, *supra*, 18 Cal.5th at pp. 380, 382.)

" 'The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary* loss suffered by the *heirs*.' " (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263; accord, *Holland*, *supra*, 18 Cal.5th at p. 375.) The damages recoverable in a wrongful death claim "may include (1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship." (*Quiroz*, at p. 1264; accord, *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 795–796.) " '[N]o damages can be given for the pain or anguish suffered by the person who is killed, the damages . . . being limited to the pecuniary loss suffered by the person or persons for whose benefit the right of action is given by reason of the death of the victim.' " (*Corder v. Corder* (2007) 41 Cal.4th 644, 661.) Because the only issues for the wrongful death claim are whether Kindred's wrongful acts caused Ana's death and whether her relatives suffered harm from her loss, only Kindred's acts that caused Ana's death are relevant, not any acts that caused other injuries to Ana before her death.

While Jennifer and Faamalieloto point to their allegations that Kindred harmed Ana in several different ways before death, such as by denying her dialysis or failing to assist her with toileting, the complaint alleges only one action that caused Ana's death. The complaint states plainly and repeatedly that the

15

disconnection of Ana's ventilator tube caused her to suffer a severe anoxic brain injury, which in turn caused her death. Accordingly, the question of whether Jennifer and Faamalieloto's wrongful death claim rests on medical or custodial acts reduces to the question of whether Kindred's alleged actions with regard to Ana's ventilator were medical or custodial.

We have little difficulty concluding that failing to monitor and reconnect a ventilator is professional negligence, not custodial neglect. Jennifer and Faamalieloto characterize the issue as neglect because Kindred failed to have a staff member available to observe and check on Ana when she was starved for oxygen. But Kindred's negligent act was not one of failing to provide medical care, since it undertook to provide respiratory care upon Ana's transfer while on the ventilator. (*Holland*, *supra*, 18 Cal.5th at pp. 379–380 [distinction between failure to provide medical care, which is custodial, and negligent undertaking of medical services, which constitutes professional negligence].) Its alleged breach occurred in its failure thereafter to pay attention to the ventilator it was already providing and ensure it continued to function properly and give Ana the assistance with breathing that she needed. (§ 1295, subd. (g)(2) [" 'Professional negligence' means a negligent act *or omission to act* by a health care provider in the rendering of professional services," italics added].) The provision of a ventilator to assist a patient with breathing to maintain the patient's life is, on its face, medical care, not a custodial act incidental to medical care. The complaint reinforces this conclusion, since it alleges that

16

Kindred was negligent per se because it violated numerous regulations concerning the use of respirators as part of medical care. These regulations specify that a ventilator is part of equipment used for acute respiratory care and a licensed physician must have overall responsibility for respiratory care. (Cal. Code Regs., tit. 22, §§ 70405, 70407(a)(3) & (6), 70619(a); 42 C.F.R. § 482.57(a)(1) (2025).) As *Holland* reaffirmed, "The term 'professional negligence' covers '[a] hospital's negligent failure to maintain equipment that is necessary or otherwise integrally related to . . . the provision of medical care to a patient.'" (*Holland*, *supra*, 18 Cal.5th at p. 378.)

Jennifer and Faamalieloto direct us to *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 83–84, which involved an Elder Abuse Act claim against a rehabilitation center based on its failure to follow the care plan for a resident's skin condition and the resident's resulting death. The issue in that case was whether there was a triable issue of fact concerning whether the center had committed neglect under the Elder Abuse Act or merely professional negligence. (*Id.* at p. 84.) The rehabilitation center argued that it had provided care for the conditions it was aware of and it could not be liable for neglect unless there was a total absence of care. (*Id.* at pp. 86, 90.) The Court of Appeal disagreed, stating, "If some care is provided, that will not necessarily absolve a care facility of dependent abuse liability. For example, if a care facility knows it must provide a certain type of care on a daily basis but provides that care sporadically, or is supposed to provide multiple types of care but only provides

17

some of those types of care, withholding of care has occurred." (*Id.* at p. 90.) We will assume for the sake of argument that this reasoning is correct, but it has no application here. Plaintiffs do not allege that Kindred provided Ana a ventilator on some days but not others. Rather, it maintained Ana on a ventilator tube but failed to take due care in checking to ensure that it was operating correctly, which is negligence.

Jennifer and Faamalieloto insist that their wrongful death claim sounds in neglect, not professional negligence, because they alleged Kindred acted recklessly or with oppression, fraud, or malice, and such claims necessarily fall within the scope of the Elder Abuse Act and outside the scope of professional negligence. Their argument relies on *Delaney v. Baker* (1999) 20 Cal.4th 23, which was one of the decisions *Holland* considered regarding the boundaries between elder abuse and professional negligence. (*Holland*, *supra*, 18 Cal.5th at p. 379.)

The question in *Delaney* was whether a health care provider that engages in reckless neglect under the Elder Abuse Act is subject to that law's heightened remedies, or whether the health care provider would be protected by an exception to the Elder Abuse Act for acts of professional negligence as defined in a MICRA statute. (*Delaney*, *supra*, 20 Cal.4th at pp. 26–27; Welf. & Inst. Code, § 15657.2, incorporating definition of "professional negligence" in Code Civ. Proc., § 340.5.) *Delaney* held the exception would not protect a health care provider because professional negligence in medical care is distinct from neglect of

18

custodial obligations. (*Delaney*, at p. 34.) *Holland* relied on this aspect of *Delaney*. (*Holland*, *supra*, 18 Cal.5th at pp. 379–380.)

But *Delaney* also recognized the difficulty in distinguishing between neglect and professional negligence when a health care institution both performs custodial functions and provides professional medical care. (*Delaney*, *supra*, 20 Cal.4th at p. 34.) *Delaney* provided the example of a nursing home that allows a patient to suffer malnutrition, which the defendants there argued would be professional negligence but the court found "is also unquestionably 'neglect.'" (*Id.* at pp. 34–35.) In language that Jennifer and Faamalieloto rely on here, *Delaney* stated that Welfare and Institutions Code section 15657 "provides the way out of this ambiguity" because neglect that "is 'reckless,' or done with 'oppression, fraud or malice,'" falls within the scope of the Elder Abuse Act and "as such cannot be considered simply 'based on . . . professional negligence within the meaning of" Welfare and Institutions Code section 15657.2 and MICRA. (*Delaney*, at p. 35; accord, *id.* at p. 31 [Welf. & Inst. Code, § 15657 requires proof of "something more than negligence"].)

This discussion in *Delaney* on its face supports Jennifer and Faamalieloto's position that neglect that is alleged to be reckless or done with oppression, fraud, or malice can never be professional negligence, even if it involves medical care. However, *Delaney* is not precisely on point, since it concerned the availability of additional remedies under the Elder Abuse Act, not arbitrability. Nor is it the California Supreme Court's latest word on the relationship between the Elder Abuse Act and

19

MICRA's provisions relating to professional negligence. *Holland* is both, and as discussed *ante*, it drew a clear line between the types of activities that constitute professional negligence and neglect, rather than relying on differences in mental state.

*Holland's* abandonment of *Delaney*'s mental states-based approach was not an oversight. In a footnote, *Holland* acknowledged that *Delaney* had said that the Elder Abuse Act "reaches only ' "acts of egregious abuse" against elder and dependent adults' and excludes 'simple' or 'mere' negligence in the rendition of medical services." (*Holland*, *supra*, 18 Cal.5th at p. 380, fn. 3.) But *Holland* did not rely on that rationale to distinguish between arbitrable and non-arbitrable wrongful death claims. (*Ibid.*) It emphasized instead its holding in another case, *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 785, that " 'health care provider and elder custodian "capacities" are conceptually distinct.' " (*Holland*, at p. 380, fn. 3.) Accordingly, whatever the continuing vitality of *Delaney*'s mental states-based rationale when determining whether the Elder Abuse Act's heightened remedies are available for a claim of neglect based on medical care, *Holland* is clear that the type of conduct, not mental state, determines whether a wrongful death claim is for professional negligence or elder abuse for the purposes of arbitrability. *Holland* is directly on point here, so we must follow it, notwithstanding *Delaney*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction"].)

Because Kindred's alleged failure to monitor Ana's ventilator that led to her death involved medical and not custodial care, the trial court erred by not ordering Jennifer and Faamalieloto's wrongful death claim based on the ventilator to arbitration. As we explain *post*, this is the only error in the trial court's ruling, so the proper remedy is to amend the trial court's order to add the wrongful death claim to the list of claims to be arbitrated. The clarity with which plaintiffs' complaint alleges the cause of Ana's death distinguishes it from the complaint in *Holland*, which lacked sufficient detail regarding the connection between the defendants' conduct and the decedent's injury. (*Holland*, *supra*, 18 Cal.5th at p. 385.) Unlike *Holland*, there is no reason to remand here to give plaintiffs an opportunity to amend their complaint. (Cf. *ibid.*) Additionally, the trial court already exercised its discretion under section 1281, subdivision (c) to stay the litigation in favor of the arbitration when it believed the wrongful death needed to be litigated. There is no valid reason for it to change that decision now that an additional claim needs to be arbitrated, so there is no reason to remand to give the trial court a chance to exercise its discretion anew. We will therefore simply modify the trial court's order to require arbitration of Jennifer and Faamalieloto's wrongful death claim as well as requiring arbitration of Ana's survivor claims for negligence, elder abuse, fraud and violation of the UCL.

## II. Fraud and UCL

Independent of its argument based on section 1295, *Ruiz*, and *Holland*, Kindred argues that the FAA preempts any

21

California rule preventing Ana from agreeing to arbitrate Jennifer and Faamalieloto's claims for wrongful death, fraud, and violation of the UCL. Because we conclude that the trial court should have ordered the wrongful death claim to arbitration, we consider this argument only as it relates to Jennifer and Faamalieloto's fraud and UCL claims.

Kindred's FAA argument rests on several premises. First, it asserts that the FAA applies to the arbitration agreement. Second, Kindred points out that the United States Supreme Court has held that the FAA preempts state law, both legislative and judicial, that overtly or covertly discriminates against arbitration agreements. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 341–343.) Third, Kindred asserts that the general rule applied in *Avila* that a decedent's heirs are not obligated to arbitrate claims unless they are parties to the arbitration agreement, even when the arbitration agreement states that it binds the heirs and is signed by an heir on behalf of the decedent, is a judicially created rule specifically applicable to arbitration. More specifically, Kindred accepts that arbitration is a matter of consent but faults *Avila* for not explaining why a decedent or representative acting under a power of attorney cannot consent to arbitrate an heir's wrongful death claim. From these premises, Kindred concludes that the FAA preempts *Avila*'s rule, which the trial court applied, that an heir is only obligated to arbitrate claims if the heir signed an arbitration agreement in his or her individual capacity.

Kindred's argument fails for multiple reasons, but the simplest is that Kindred fails to show that a decedent like Ana could bind her heirs with respect to their individual fraud and UCL claims in areas other than arbitration – meaning it has failed to establish that the *Avila* rule is uniquely hostile to arbitration. Kindred points out that *Ruiz* recognized that a decedent could bind her heirs' wrongful death claims in certain ways, such as by signing a waiver of negligence and assuming all risk of an activity. (*Ruiz, supra*, 50 Cal.4th at pp. 851–852.) But this rule is specific to heirs' wrongful death actions, which, even if not they do not belong to or derive from the decedent, are nonetheless related to the decedent's actions during life because of the requirement that the decedent's death be wrongful before the heirs may recover. (*Quiroz v. Seventh Ave. Center, supra*, 140 Cal.App.4th at p. 1263.) Kindred does not identify and we are not aware of any similar principle applicable to fraud or UCL claims that heirs have in their own right, separate from their role as heirs or successors in interest to the decedent.

Kindred relies on the fact that Jennifer signed the arbitration agreement on behalf of Ana, asserting that there is no evidence that Jennifer believed her signature did not bind her to arbitrate her individual claims. But Jennifer signed the agreement only as Ana's representative. An agent's signature on a contract under a power of attorney is not an agreement by the heir. Rather, the general rule is that an agent is not liable on a contract she executes in good faith on behalf of a disclosed principal. (*Area 51 Productions, Inc. v. City of Alameda* (2018)

23

20 Cal.App.5th 581, 603, fn. 13.)  Kindred's argument therefore gets the burden of proof backwards.  In these circumstances, it is Kindred, as the party moving to compel arbitration of Jennifer and Faamalieloto's individual claims, that has the burden of proving that Jennifer's signature indicated her agreement to arbitrate her own individual claims.  (*Avila, supra,* 20 Cal.App.5th at p. 844.)  Kindred offers no such evidence or otherwise demonstrates that the trial court's finding that Jennifer signed the agreement solely as Ana's representative lacks substantial evidentiary support.  Kindred also ignores the claims of Faamalieloto, who did not sign the arbitration agreement in any capacity.

As *Avila* pointed out, whether an arbitration agreement exists is a basic question of contract formation and state contract law.  (*Avila, supra,* 20 Cal.App.5th at pp. 843–844.)  Kindred has not shown that California contract law allows a decedent to affect heirs' individual fraud or UCL claims in areas other than arbitration.  Nor has Kindred shown that California treats the formation of arbitration agreements differently than other agreements.  As a result, Kindred has failed to show that the rule requiring heirs' consent in their individual capacities to arbitrate fraud and UCL claims specifically disfavors arbitration and is preempted by the FAA.

### DISPOSITION

The trial court's order is modified to compel arbitration of Jennifer and Faamalieloto's claim for wrongful death, as well as the negligence, neglect, fraud, and UCL claims brought on Ana's

24

behalf.  As so modified, the trial court's order is affirmed. Kindred shall recover its costs on appeal.


BROWN, P. J.


WE CONCUR:

GOLDMAN, J.
MOORMAN, J.*


*Faiaipau v. THC-Orange County, LLC et al.*  (A171351)

---

* Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:      Alameda County Superior Court

Trial Judge:      Hon. Joscelyn Jones

Counsel:          J Supple Law, John L. Supple, Jodie C. Feusner, Matthew
                  Schroeder, Robert D. Sanford; Gordon Rees Scully
                  Mansukhani LLP, Lindsey M. Romano, Don Willenburg,
                  David K. Ries for Defendants and Appellants

                  York Law Corporation, Wendy C. York, Daniel Jay for
                  Plaintiffs and Respondents.